**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRITTANY MCHENRY,
Plaintiff,

-against-

FOX NEWS NETWORK, LLC; FOX
CORPORATION; GEORGE MURDOCH (A/K/A
"TYRUS"); JENNIFER RAUCHET; JOHN
FINLEY; and MONICA MEKEEL,

Defendants.

Case Number: 1:19-CV-11294-PAE

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT GEORGE MURDOCH'S MOTION TO DISMISS THE PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   BRIEF STATEMENT OF FACTS ......................................................... 1

III.  ARGUMENT ......................................................................................... 3

      A.  LEGAL STANDARD ................................................................... 3

      B.  PLAINTIFF'S DIVISION COMPLAINT DOES NOT DIVEST THIS
          COURT OF JURISDICTION OVER HER CLAIMS .................................... 4

      C.  THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES
          EMPLOYMENT CLAIMS AGAINST DEFENDANT UNDER THE
          NYSHRL AND NYCHRL ......................................................... 5

          1.    The NYSHRL and NYCHRL Must Be Liberally Construed ........ 5

          2.    Plaintiff Has Plausibly Stated a Claim Against Defendant for
                Discrimination under the NYCHRL ............................................. 6

          3.    Plaintiff Has Plausibly Stated a Claim Against Defendant for
                Retaliation Under the NYCHRL .................................................. 11

                a.  Ms. McHenry Engaged in Protected Activity .................. 11

                b.  Defendant Murdoch's Retaliatory Conduct Was
                    Reasonably Likely to Deter a Person from Engaging in
                    Protected Activity ........................................................... 13

                c.  Ms. McHenry Plausibly Alleges Causation
                    and Motive .................................................................... 14

          4.    Plaintiff Has Plausibly Stated a Claim Against Defendant for
                Aiding and Abetting Discrimination and Retaliation ................. 15

                a.  Defendant Murdoch Aided and Abetted NYSHRL
                    Gender Discrimination and Sexual Harassment ........ 16

                b.  Defendant Murdoch Aided and Abetted NYSHRL
                    Retaliation .................................................................... 18

                c.  Defendant Murdoch Aided and Abetted NYCHRL
                    Gender Discrimination .................................................. 19

                d.  Defendant Murdoch Aided and Abetted NYCHRL
                    Retaliation .................................................................... 21

D. THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................. 23

IV.   CONCLISION ........................................................................................................ 25

# TABLE OF AUTHORITIES

<u>Cases</u> <span style="float:right;">Page(s)</span>

*Abel v. Bonfanti,*
   625 F. Supp. 263 (S.D.N.Y. 1985) ................................................................18

*Anderson v. Davis Polk & Wardwell LLP,*
   850 F. Supp. 2d 392 ......................................................................................7

*Allen v. WestPoint–Pepperell, Inc.,*
   945 F.2d 40 (2d Cir. 1991)........................................................................5, 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................3

*Bermudez v. City of New York,*
   783 F. Supp. 2d 560 (S.D.N.Y. 2011)............................................................9

*Bonner v. Guccione,*
   916 F. Supp. 271 (S.D.N.Y. 1996) ................................................... 23, 24, 25

*Clarke v. InterContinental Hotels Grp., PLC,*
   12-cv-2671, 2013 WL 2358596 (S.D.N.Y. May 30, 2013)................................... 6, 19-20

*Clarke v. Pacifica Found.,*
   07-cv-4605, 2011 WL 4356085 (E.D.N.Y. Sept. 16, 2011)............................10

*Colon v. Mark-Viverito,*
   16-cv-4540, 2018 WL 1565635 (S.D.N.Y. Mar. 26, 2018),
   *order amended on reconsideration sub nom.*, 16-cv-4540, 2019 WL 1315877
   (S.D.N.Y. Mar. 22, 2019) ..............................................................................9

*Doe v. Doe,*
   16- cv-0332, 2017 WL 3025885 (S.D.N.Y. July 14, 2017)........................23, 24

*Eastman Chemical Products, Inc. v. New York State Division of Human Rights,*
   162 A.D.2d 157, 556 N.Y.S.2d 571 (1st. App. Div. 1990)..................................4

*Del Castillo v. Pathmark Stores, Inc.,*
   941 F. Supp. 437 (S.D.N.Y. 1996) ................................................................11

*DeLuca v. Sirius XM Radio, Inc.,*
   12-cv-8239, 2017 WL 3671038 (S.D.N.Y. Aug. 7, 2017) ................................9

*Farrugia v. N. Shore U. Hosp.,*
   13 Misc. 3d 740 (N.Y. Sup. Ct. 2006), *adhered to on reargument,*
   (N.Y. Sup. Ct. 2001) ....................................................................................17

*Feingold v. New York,*
   366 F.3d 138 (2d Cir. 2004)..................................................................... 15-16

*Fowler v. Scores Holding Co.*,
677 F. Supp. 2d 673 (S.D.N.Y. 2009)...................................................................3

*Gallo* v. *Alitalia-Linee Aeree Italiane-Societa per Azioni*,
585 F. Supp. 2d 520 (S.D.N.Y. 2008)....................................................12, 13, 15

*Gregory v. Daly*,
243 F.3d 687 (2d. Cir. 2001), *as amended* (April 20, 2011) ...................9, 16, 19

*Griffin v. Sirva, Inc.*,
29 N.Y.3d 174 (2017) .............................................................................................16

*Harrison v. SUNY Downstate Med. Ctr.*,
16-cv-1101, 2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) ..............................9

*Johnson v. Medisys Health Network*,
10-cv-1596, 2011 WL 5222917 (E.D.N.Y. June 1, 2011), *report and recommendation adopted as modified*, 10-cv-1596, 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011)..............................................................11, 14, 15

*Johnson v. Cnty. of Nassau*,
82 F. Supp. 3d 533 (E.D.N.Y. 2015) ..................................................................16

*Johnson v. Strive E. Harlem Empl. Group*,
990 F. Supp. 2d 435 (S.D.N.Y. 2014)..................................................................20

*LaRocca v. Collen IP, Intellectual Prop. Law, P.C.*,
08-cv-6274, 2009 WL 10435869 (S.D.N.Y. May 6, 2009) ..............................24

*Laurin v. Pokoik*,
02-cv-1938, 2005 WL 911429 (S.D.N.Y. Apr. 18, 2005) .................................12

*Little v. Nat'l Broad. Co.*,
210 F. Supp. 2d 330 (S.D.N.Y. 2002)..................................................................12

*Margerum v. City of Buffalo*,
24 N.Y.3d 721 (2015) ..............................................................................................5

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.* ("*Mihalik I*"),
09-cv-1251, 2011 WL 3586060 (S.D.N.Y. July 29, 2011)..............................10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)...................................................... *passim*

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................................................................................3

*National Org. for Women v. State Div. of Human Rights*,
34 N.Y.2d 416 (1974) .............................................................................................16

*Nigro v. Pickett*,
39 A.D.3d 720, 833 N.Y.S.2d 655 (2d Dept. 2007) ........................................23

*Oshinsky v. New York City Hous. Auth.*,
    98-cv-5467, 2000 WL 218395 (S.D.N.Y. Feb. 23, 2000) .................................................5

*Patane v. Clark*,
    508 F.3d 106 (2d. Cir. 2007)..............................................................................................8, 17

*Philip v. Gtech Corp.*,
    14-cv-9261, 2016 WL 3959729 (S.D.N.Y. July 20, 2016).............................................15

*Priore v. New York Yankees*,
    307 A.D.2d 67 (2003))......................................................................................................17

*Promisel v. First Am. Artificial Flowers, Inc.*,
    943 F.2d 251 (2d Cir. 1991)................................................................................................4

*Reed v. A.W. Lawrence & Co., Inc.*,
    95 F.3d 1170 (2d. Cir. 1996)............................................................................................18

*Reid v. Ingerman Smith LLP*,
    876 F. Supp. 2d 176 (E.D.N.Y. 2012) .............................................................................11

*Scotto v. City of New York*,
    18-cv-04228, 2019 WL 6701919 (S.D.N.Y. Dec. 9, 2019).............................................23

*Schanfield v. Sojitz Corp. of America*,
    663 F. Supp. 2d 305 (S.D.N.Y. 2009)..............................................................................15

*Shapiro v. AEO/Ricoh, Inc.*,
    96-cv-7274, 1997 WL 452026 (S.D.N.Y. Aug. 7, 1997) ................................................24

*Soloviev v. Goldstein*,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) .............................................................................12

*Stinnett v. Delta Airlines*,
    18-cv-2704, 2019 WL 1493224, at *8 (E.D.N.Y. Mar. 31, 2019).....................................9

*St. Jean v. Orient-Express Hotels Inc.*,
    963 F. Supp. 2d 301 (S.D.N.Y. 2013)..............................................................................10

*Treglia v. Town of Manlius*,
    313 F.3d 713 (2d Cir. 2002)........................................................................................12, 14

*Velazquez v. City of New York*,
    08-cv-2159, 2010 WL 11507304 (S.D.N.Y. Aug. 19, 2010), *aff'd*,
    468 F. App'x 22 (2d Cir. 2012) .......................................................................................10

*Wang v. Phoenix Satellite TV US, Inc.*,
    976 F. Supp. 2d 527 (S.D.N.Y. 2013)............................................................................6, 9

*Watkins v. First Student, Inc.*,
    17-cv-1519, 2018 WL 1135480 (S.D.N.Y. Feb. 28, 2018) ...............................................9

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir. 2000)..................................................................................................4

*Williams v. New York City Dept. of Educ.,*
    19-cv-1353, 2019 WL 4393546 (S.D.N.Y. Aug. 28, 2019) ........................................ 16-17

*Williams v. New York City Hous. Auth.,*
    61 A.D.3d , 872 N.Y.S.2d 27, 39 (1st Dep't 2009) ................................................6, 14, 22

*Wright v. Monroe Cmty. Hosp.,*
    493 F. App'x 233 (2d Cir. 2012) ...................................................................................11

*Xiang v. Eagle Enterprises, LLC,*
    19-cv-1752, 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ...........................................15, 16

*Zavaleta v. Bayerische Vereinsbank AG,*
    92-cv-5759, 1996 WL 521423 (S.D.N.Y. Sept. 12, 1996) .............................................4, 5

<u>Statutes and Other Authorities</u>

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................3, 5

N.Y. Exec. Law § 296 *et seq.* .....................................................................................9, 15, 16

N.Y. Exec. Law § 297............................................................................................................4

N.Y. Exec. Law § 300............................................................................................................6

N.Y.C. Admin. Code § 8–107 *et seq.* ...............................................................................6, 20, 22

Plaintiff Brittany McHenry hereby submits this Memorandum of Law in Opposition to Defendant George Murdoch's Motion to Dismiss Plaintiff's Amended Complaint.

## I.   <u>INTRODUCTION</u>

Plaintiff Brittany McHenry endured months of explicit, disturbing, and unwanted sexual advances from Defendant George Murdoch, who retaliated against her mercilessly upon learning that she had a boyfriend.  Defendant Murdoch's motion to dismiss is replete with bizarre and unsupported assertions, which reveal the inner mind of a man who threatens to send pictures of his genitalia to coworkers.  While these assertions might ultimately help the trier of fact understand the depths of his depravity and misogynies, they help render his motion legally frivolous.

## II.   <u>BRIEF STATEMENT OF FACTS</u>

In July 2018, Defendant Fox News Network, LLC ("Fox News") hired Plaintiff Brittany McHenry ("Plaintiff" or "Ms. McHenry") to host *Un-PC*, a talk show on its Fox Nation streaming service, with co-host Defendant George Murdoch ("Defendant" or "Defendant Murdoch").  (First Amended Complaint ["FAC"] at ¶ 64.)  In the fall of 2018, Defendant Murdoch began sexually harassing Ms. McHenry.  (*Id.* at ¶ 71.)  Defendant Murdoch sent Ms. McHenry lewd and inappropriate text messages (including telling her he "love[d] [her] legs" and would like to see her on her "knees hotness" (*Id.* at ¶ 73)), threatened to send Ms. McHenry photographs of his genitals multiple times (*Id.* at ¶¶ 74, 80), and speculated what it would be like after he and Ms. McHenry had sexual intercourse (*Id.* at ¶ 79).  Defendant Murdoch also grabbed Ms. McHenry's hand after becoming intoxicated at a dinner in November 2018.  (*Id.* at ¶ 76.)  Ms. McHenry did not consent to Defendant Murdoch's sexual advances and his harassment was at all times unwelcome.  (*Id.* at ¶ 82.)

After Defendant Murdoch learned that Ms. McHenry had a boyfriend and realized that she would not acquiesce to his sexual advances, he became hostile and abusive towards her.  (*See id.* at ¶ 83.)  He verbally attacked her on set, saying she had "no integrity" and that she was an "idiot." (*Id.* at ¶¶ 84, 86.)  He was rude to her and made a point not to talk to her unless they were on camera.  (*Id.* at ¶ 85.)  He cursed at her in front of a show guest.  (*Id.* at ¶ 86.)  Ms. McHenry was distraught by Defendant Murdoch's retaliatory behavior, and complained about the sexual harassment to Fox News and/or Defendant Fox Corporation ("Fox Corp.") at on at least four separate occasions.  (*Id.* at ¶¶ 83-84, 86-87) (collectively, Fox News and Fox Corp. are referred to as "Entity Defendants").  In response to Ms. McHenry's complaints, Defendant Murdoch was not disciplined and was given his own show, which was effectively a promotion. (*Id.* at ¶ 89.)  On social media, Defendant Murdoch publicly mocked the "investigation" purportedly conducted by Fox News into Ms. McHenry's sexual harassment complaints.  (*Id.* at ¶ 91.)

After Ms. McHenry's repeated requests for a legitimate investigation, Fox News hired a purportedly independent investigator to conduct a purported investigation into Ms. McHenry's claims.  (*Id.* at ¶ 101.)  Fox News' counsel produced text messages to Ms. McHenry which had been submitted by Defendant Murdoch during the "investigation," purportedly between himself and Ms. McHenry.  (*Id.* at ¶ 105.)  The screenshots contain two photographs purportedly sent from Ms. McHenry with her cleavage and near bare breasts shown.  (*Id.* at ¶ 106.)  The text messages and photos are fraudulent, doctored, and not of Ms. McHenry.  (*Id.*)  Indeed, a simple Google Image search shows that the first image was taken from a website and the woman depicted is not Ms. McHenry.  (*Id.*)  Ms. McHenry tried to compel a forensic examination of Defendant's cell phone by offering her own on the condition that he do the same, but he refused. (*Id.* at ¶ 108.)

Defendant Murdoch had also been circulating these doctored photographs to Ms. McHenry's colleagues at Fox News, thereby irreparably damaging Ms. McHenry's reputation.  (*Id.* at ¶ 107.)

On October 29, 2019, Ms. McHenry filed a complaint with the New York State Division of Human Rights (the "Division") alleging sexual harassment, discrimination, and retaliation.  (*Id.* at ¶ 110.)  Ms. McHenry requested to withdraw her Division complaint on December 6, 2019 and filed the instant action in the Southern District of New York on December 10, 2019 ("SDNY Complaint").  (*Id.* at ¶ 111; ECF #1.)  After Ms. McHenry filed the SDNY Complaint, Defendant publicly mocked Ms. McHenry once again on social media.  (*See* FAC at ¶ 115.)  On February 13, 2020, the Division acknowledged receipt of Plaintiff's request for dismissal.  (*Id.* at ¶ 112.)

## III.   ARGUMENT

### A.  LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993).  In order to survive a 12(b)(6) motion to dismiss, the complaint must sufficiently plead facts to "state a claim to relief that is *plausible on its face*."  335 F. Supp. 3d at 513 (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) [internal citations omitted]).  A claim's facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  In order to survive a motion to dismiss under Rule 12(b)(6), employment claims "need not need to contain specific facts establishing a prima facie case of employment discrimination," rather, the complaint must only be "facially plausible, and must give fair notice to the defendants of the basis for the claim."  *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).

**B. PLAINTIFF'S DIVISION COMPLAINT DOES NOT DIVEST THIS COURT OF JURISDICTION OVER HER CLAIMS**

Section 297(9) of the New York State Human Rights Law authorizes a complainant to pursue her claims in court, unless she has already filed a complaint with the Division.  N.Y. Exec. Law § 297(9).  However, the same provision also contains an "escape hatch" whereby a complainant may avail herself of the judicial system if the Division dismisses her complaint for "administrative convenience."  *See Zavaleta v. Bayerische Vereinsbank AG*, 92-cv-5759, 1996 WL 521423, at *2 (S.D.N.Y. Sept. 12, 1996).  The Second Circuit has found "retaining the complaints by [the Division] would not advance the State's human rights goals, especially since it would compel the use of scarce State resources where the complainants had the desire and resources to bring the complaints in Federal court."  *Promisel v. First Am. Artificial Flowers*, *Inc.,* 943 F.2d 251, 257–58 (2d Cir. 1991) (citing *Eastman Chemical Products, Inc. v. New York State Division of Human Rights*, 162 A.D.2d 157, 556 N.Y.S.2d 571, 572 (1st. App. Div. 1990)).

Defendant Murdoch argues that because the Division had not dismissed her complaint at the time of filing, the FAC must be dismissed for lack of subject matter jurisdiction.  (Def.'s Mot. at 5.)  This is incorrect.  The Second Circuit has upheld jurisdiction in cases where the plaintiff requested and received dismissals at much later stages of their lawsuits than Ms. McHenry. *See, e.g., Promisel*, 943 F.2d at 258 (2d Cir. 1991) (jurisdiction upheld where Division complaint was dismissed over a year after plaintiff filed his SDNY complaint); *Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 76 (2d Cir. 2000) (jurisdiction upheld where Division complaint was dismissed over a year after SDNY complaint was filed, before a summary judgment hearing). The Southern District of New York has similarly denied motions to dismiss even when the plaintiffs requested a dismissal of their Division complaints *after* filing in federal court.  *See, e.g., Zavaleta*, 1996 WL 521423, at *1 (upholding jurisdiction where the plaintiff requested a dismissal

4

of her Division complaint and obtained such dismissal five years after she filed her SDNY complaint and almost two years after she prevailed on a motion for summary judgment); *Oshinsky v. New York City Hous. Auth.*, 98-cv-5467, 2000 WL 218395, at \*11 (S.D.N.Y. Feb. 23, 2000) (upholding jurisdiction after plaintiff pled in her SDNY complaint that she "would ask" for dismissal of her Division complaint and her complaint was not dismissed until several months after the complaint was filed).

Here, Ms. McHenry requested the dismissal of her Division complaint on December 6, 2019, before this action was filed.  (FAC ¶¶ 110-111.)  On February 13, 2020, the Division notified Ms. McHenry her dismissal was being processed.  (*Id.* at ¶ 112.)  Defendant has not cited any SDNY or Second Circuit case that would warrant dismissal on these facts.  Notably, out of the six defendants in this case, Defendant Murdoch is the only one to raise this frivolous jurisdiction issue.  (*See also* ECF ## 44, 46.)  Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss on jurisdictional grounds.[1]

## C.  THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES EMPLOYMENT CLAIMS AGAINST DEFENDANT UNDER THE NYSHRL AND NYCHRL

### 1.  *The NYSHRL and NYCHRL Must Be Liberally Construed*

Historically, the standards of recovery under the New York State Human Rights Law (the "NYSHRL") have been "in nearly all instances identical to Title VII and other federal law." *Margerum v. City of Buffalo,* 24 N.Y.3d 721, 731 (2015) (internal citations omitted).  However, in

---

[1] Defendant includes numerous factual allegations in his argument to which he assigns no citation, which indeed he cannot, because they are not in the FAC.  (*See* Def.'s Mot. at 5 ["Mr. Murdoch and his co-defendants submitted formal responses to the Division Complaint on December 6, 2019."; "Mr. Murdoch never received written notice of such a request."; "…nor has Mr. Murdoch received written confirmation of any dismissal."].)  In adjudicating a Rule 12(b)(6) motion, the district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991).  Therefore, Plaintiff requests that the Court exclude the additional, uncited allegations adduced by Defendant (which appear throughout his motion), and decide the motion on the facts stated on the fact of the FAC.

2019, the NYSHRL was amended to direct courts to construe the NYSHRL liberally for the accomplishment of the "remedial" purposes thereof, "regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  Therefore, Title VII should not be applied to the NYSHRL where it is not construed liberally.

Additionally, under the Restoration Act of 2005, courts must interpret the New York City Human Rights Law (the "NYCHRL") independently from the NYSHRL, which represents a "a floor below which the City's Human Rights law cannot fall."  *Wang v. Phoenix Satellite TV US, Inc.*, 976 F. Supp. 2d 527, 539 (S.D.N.Y. 2013) (internal citations omitted).  "Therefore, claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL."  *Id.*  As explained below, Defendants' motion should be denied as to Plaintiff's "floor level" NYSHRL claims, which arguments necessarily apply to her NYCHRL claims, as well as to Plaintiff's NYCHRL claims on independent grounds.

> 2.  *Plaintiff Has Plausibly Stated a Claim Against Defendant for Discrimination Under the NYCHRL*

The NYCHRL prohibits "an employee . . . because of the actual or perceived . . . gender . . . [t]o discriminate against such person in compensation or in terms, conditions, or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  "Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims."  *Clarke v. InterContinental Hotels Grp., PLC,* No. 12-cv-2671, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013).  "[T]he plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees" because of a protected trait.  *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 (2d. Cir. 2013) (quoting *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)) (internal quotation marks omitted).  "Forcing a targeted

employee to suffer 'unwanted gender-based conduct' imposes a different terms or condition of employment on her, even if the harassing conduct does not rise to the level of being 'severe and pervasive.'" *Mihalik,* 715 F.3d at 110 (internal citations omitted).  "Even 'a single comment that objectifies women ... made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable.'"  *Id.* at 111 (internal quotations omitted).  Whether conduct is sufficient to impose different terms or conditions, or whether the defendant has a valid affirmative defensive that the conduct "amounted to no more than a petty slight," is generally a question of fact for a jury.  *See id.* at 111.

Somewhat confoundingly, Defendant argues that the Complaint does not "identify any conduct that could be considered workplace discrimination or harassment under the NYCHRL." (Def.'s Mot. at 12.)  However, Plaintiff alleges that Defendant Murdoch discriminated against her by engaging in "unwanted" conduct towards her on the basis of her gender – initially, the unwanted conduct consisted of inappropriate sexual innuendo and sexual advances towards her, including commenting on her body and threatening to send her photos of his genitals.  (FAC at ¶¶ 71-80.) Plaintiff alleges that she "did not consent to Mr. Murdoch's sexual messages and his sexual advances" and that his advances "were at all times unwanted…"  (*Id.* at ¶ 82.)  Plaintiff alleges that Defendant Murdoch's "unwanted" conduct towards her manifested itself in hostility and aggression after she resisted his advances and ultimately brought her boyfriend to New York for Fox tapings.  (*Id.* at ¶¶ 75-77, 81, 84.)  Plaintiff also alleges that Defendant doctored photographs purporting to be of her cleavage and circulated them around Fox News.  (*Id.* at ¶¶ 106-107, 162.) This is manifestly not a case where the plaintiff has only identified a single behavior which, as a matter of law, cannot be considered discrimination.  *Compare with Anderson v. Davis Polk & Wardwell LLP,* 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) ("We find that plaintiff's allegations at

most support the inference that on some occasions…plaintiff's supervisor and accordingly had reason to visit him in his cubicle…stood too close to plaintiff.").

Defendant also argues that his conduct was not "unwanted." (Def.'s Mot. at 13.) This is ultimately a question of fact for the jury. *Patane v. Clark*, 508 F.3d 106, 114 (2d. Cir. 2007) ("Whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry…"). Regardless, Plaintiff's allegations are very clear: "Ms. McHenry did not consent to Mr. Murdoch's sexual messages and his sexual advances." (FAC at ¶ 12.) "Mr. Murdoch's sexual advances were at all times unwanted by Ms. McHenry." (*Id.*) Ms. McHenry "politely replied to his grossly sexualized texts with friendly but non-sexual responses." (*Id.* at ¶ 75.) "Ms. McHenry never crossed the line or sent Mr. Murdoch any sexual messages." (*Id.*) "Defendant Murdoch sexual harassed Plaintiff over a span of several months including sending her sexually explicit text messages, despite Plaintiff making clear that such sexually explicit messages were unwelcome." (*Id.* at ¶ 205.) That Defendant Murdoch *still* does not understand that Ms. McHenry does not, and never did, welcome his sexual advances is indicative of his mindset.

Yet again, Defendant also introduces facts which are not in the complaint to create a false accounting of events. Defendant argues that "it was *Ms. McHenry* who repeatedly instigated flirtatious conversations by sending Mr. Murdoch photographs." (Def.'s Mot. at 13) (emphasis in original). Ms. McHenry never "instigated flirtatious conversations," and as this allegation is not in the complaint, Defendant's delusional contention should be disregarded by this Court. *See Allen,* 945 F.2d at 44.

Defendant also argues that Plaintiff must identify a similarly-situated male employee that received more favorable treatment from Defendant than Plaintiff. (Def.'s Mot. at 10-11.) However, Defendant cites no authority for this proposition where the unfavorable treatment at

issue is unwanted gender-based conduct.  *See Mihalik*, 715 F.3d at 110-111.  Indeed, none of the cases cited by Defendant in this regard concern unwanted sexual advances or comments that objectify women (*DeLuca v. Sirius XM Radio, Inc.*, 12-cv-8239, 2017 WL 3671038, at *15 (S.D.N.Y. Aug. 7, 2017); *Stinnett v. Delta Airlines*, 18-cv-2704, 2019 WL 1493224, at *8 (E.D.N.Y. Mar. 31, 2019); *Harrison v. SUNY Downstate Med. Ctr.,* 16-cv-1101, 2017 WL 4326507, at *5 (E.D.N.Y. Sept. 25, 2017); *Colon v. Mark-Viverito*, 16-cv-4540, 2018 WL 1565635, at *8 (S.D.N.Y. Mar. 26, 2018), *order amended on reconsideration sub nom.*, 16-cv-4540, 2019 WL 1315877, at *3 (S.D.N.Y. Mar. 22, 2019); *Watkins v. First Student, Inc*., 17-cv-1519, 2018 WL 1135480, at *15 (S.D.N.Y. Feb. 28, 2018); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578–79 (S.D.N.Y. 2011)).  Moreover, a jury can reasonably infer that Murdoch treated her less well than male coworkers because of her sex, given that he did not make unwanted sexual advances on male employees or threaten to send them "dick pics."  (FAC at ¶ 146.)  Finally, the NYSHRL was amended in 2019 to make it explicit that the employee does *not* have to show "the existence of an individual to whom the employee's treatment must be compared."  N.Y. Exec. Law § 296(1)(h).  Because the NYSHRL represents a "a floor below which the City's Human Rights law cannot fall" (*Wang*, 976 F. Supp. 2d at 539), the NYCHRL cannot be interpreted to require identification of a similarly-situated employee where the NYSHRL does not.

Defendant also conflates Plaintiff's discrimination and retaliation claims in order to argue that Plaintiff's claims that "Mr. Murdoch cursed at her, and said that her opinion was ignorant, are not related to her gender."  (Def.'s Mot. at 11.)  However, Plaintiff alleges that this conduct constitutes the abusive and hostile work environment that Defendant created for her on set as retaliation for resisting his sexual advances and filing a sexual harassment complaint against him.  (*See* FAC at ¶¶ 83-86, 106-107.)  An allegation of a hostile work environment after a workplace

9

complaint may not only support a claim of sexual harassment, but also of retaliation. *See Gregory v. Daly*, 243 F.3d 687, 701, 701 n.12 (2d. Cir. 2001), *as amended* (Apr. 20, 2001) (noting that on a motion to dismiss, the court "need not decide whether, for Title VII purposes, it is possible for the adverse actions complained of to be caused by *both* retaliation and sex discrimination").

The other cases relied upon by Defendant are equally unavailing.  Unlike the conduct in *Velazquez v. City of New York*, 08-cv-2159, 2010 WL 11507304, at *6 (S.D.N.Y. Aug. 19, 2010), *aff'd*, 468 F. App'x 22 (2d Cir. 2012), cited by Defendant, Plaintiff alleges that she was "shocked" and "horrified" by Defendant's conduct (FAC ¶ 107).  Moreover, *Velazquez* constitutes a ruling on a motion for summary judgment, not a motion to dismiss.  In analyzing motions for summary judgment, the court has an established record and evidence obtained through the discovery process; here, "[b]ecause there has been no discovery ... Plaintiff 'need only make legally sufficient allegations of jurisdiction through its pleadings and affidavits in order to survive a motion to dismiss.'"  *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 309 (S.D.N.Y. 2013) (internal quotations omitted).  The court in *Clarke v. Pacifica Found.*, 07-cv-4605, 2011 WL 4356085, at *20 (E.D.N.Y. Sept. 16, 2011), also cited by Defendant, found that events which occurred in the workplace "fail to rise to the level of severity and pervasiveness necessary to sustain a claim for hostile work environment," analogizing to *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 09-cv-1251, 2011 WL 3586060, at *10 (S.D.N.Y. July 29, 2011) ("*Mihalik I*"), *vacated and remanded,* 715 F.3d 102, 118 (2d. Cir. 2013).  However, *Mihalik I* was later overturned by the Second Circuit, which held that the "severe and pervasive" standard does not apply to claims under the NYCHRL.  715 F.3d at 110.

///

///

10

### 3. *Plaintiff Has Plausibly Stated a Claim Against Defendant for Retaliation Under the NYCHRL*

A plaintiff alleging a claim for retaliation under the NYCHRL must allege that (1) she took an action to oppose the defendant's discrimination, and (2) as a result of the action, the defendant engaged in conduct that was "reasonably likely to deter a person from engaging in such action." *Id.* at 112.

#### a.     Ms. McHenry Engaged in Protected Activity

In *Mihalik*, the Second Circuit held that rejecting sexual advances can constitute protected activity under the NYCHRL, precluding defendant's motion for summary judgment. *Id.* at 115 ("A jury could reasonably find that Mihalik had also opposed [the defendant's] discriminatory conduct by rejecting his advances in December 2007 and telling him that his actions were 'offensive and shameful.'").   As Ms. McHenry alleges that she rebuffed Defendant's sexual advances (FAC ¶ 162), she plausibly pleads that she engaged in "protected activity" under the NYCHRL.

Defendant cites *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012); *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438–39 (S.D.N.Y. 1996); and *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) for the proposition that the rejection of sexual advances is not "protected activity" under the NYCHRL.   (Def.'s Mot. at 14.) However, each of these cases discuss "protected activity" under the NYSHRL and Title VII, <u>not</u> the NYCHRL.  The NYCHRL "must be analyzed separately and independently from federal and state discrimination claims."  *Mihalik,* 715 F.3d at 109, 113.  Moreover, cases which Defendant later cites in his brief hold that rebuffing sexual advances *does* constitute "protected activity," under both the NYCHRL *and* Title VII.  *See Johnson v. Medisys Health Network*, 10-cv-1596, 2011 WL 5222917, at *16 (E.D.N.Y. June 1, 2011), *report and recommendation adopted as*

*modified*, 10-cv-1596, 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011) ("There is no reason to disagree with the view of the majority of courts that allegations that an employee consistently refused her supervisor's sexual advances constitutes 'protected activity' for purposes of a retaliation claim. . . This conclusion is particularly appropriate as to the claims brought under the New York City law."); *see also Laurin v. Pokoik*, 02-cv-1938, 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005) (holding that the plaintiff's refusal of the defendant's sexual advances constituted "protected activity" under the more stringent standard for Title VII claims). Indeed, a "majority of courts in other districts have held that an employee's refusal to submit to sexual advances constitutes 'protected activity.'" *Little v. Nat'l Broad. Co*., 210 F. Supp. 2d 330, 385-86 (S.D.N.Y. 2002).

A direct complaint about prohibited conduct to a supervisor also constitutes protected activity (*Gallo* v. *Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 542 (S.D.N.Y. 2008)), as does participation in a resulting investigation (*Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002)). Therefore, Plaintiff's complaints to Entity Defendants as well as her participation in the resulting investigation constitute protected activity. (FAC ¶¶ 83-88, 100-103.) In *Gallo*, the district court held that the plaintiff's complaint to a supervisor was sufficient to meet the "protected activity" element of retaliation even if the complaint was ambiguous. 585 F. Supp. 2d at 542 n.13.

Defendant Murdoch argues that he was not on notice of Ms. McHenry's protected activity, citing *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 252–53 (E.D.N.Y. 2015) (holding that the defendant was not on notice of protected activity where the plaintiff's complaint made no reference to any form of discrimination but instead focused on an issue regarding fees). However, the FAC alleges that Defendant Murdoch learned of her sexual harassment complaints, participated in the

investigation into them, and retaliated against her as a result.  (*See* FAC ¶¶ 105-107, 162.)  Indeed, Defendant mocked Ms. McHenry's sexual harassment complaints on social media and submitted fraudulent text messages in connection with Fox News' "investigation," clearly establishing that he had knowledge of her protected activity.  (*Id.* at ¶¶ 91, 105-106, 115.)

    b. Defendant Murdoch's Retaliatory Conduct Was Reasonably Likely to Deter a Person from Engaging in Protected Activity

  Under the NYCHRL, "no challenged conduct may be deemed nonretaliatory unless a jury could not reasonably conclude from the evidence that such conduct was reasonably likely to deter a person from engaging in protected activity."  *Mihalik,* 715 F.3d at 112 (internal quotations and citations omitted).  "This assessment should be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct."  *Id.*

  Verbal attacks can constitute retaliation under NYCHRL. *See id.* at 115–16 (precluding defendant's motion for summary judgment on the NYCHRL retaliation claim where the defendant told the plaintiff she "added nothing of value," she had "no fucking clue what she was doing," and was "pretty much useless" after she engaged in protected activity); *see also Gallo*, 585 F. Supp. 2d at 544 (finding that a genuine issue of fact existed regarding whether offensive utterances by co-workers would be "reasonably likely to deter an employee from engaging in a protected activity under the [NYCHRL].").  Here, Ms. McHenry alleges that Defendant Murdoch, among other things, verbally attacked her on set, mocked her on social media, and distributed a falsified photo of her breasts to her colleagues after she opposed his sexual harassment.  (FAC ¶¶ 84, 91, 105-106, 115, 162.)  She also alleges that he disclosed confidential and/or untruthful information about her complaint to other Fox News employees and supervisors.  (*Id.* at ¶ 162.)  Each act was designed to punish Ms. McHenry for her sexual harassment complaints and deter future opposition to

Defendant Murdoch's discrimination, thus plausibly alleging a retaliation claim under the NYCHRL. (*Id.* at ¶ 164.)   The jury is "best suited" to evaluate whether this conduct was "reasonably likely to deter a person from engaging in protected activity." *Williams v. New York City Hous. Auth.*, 61 A.D.3d at 71.

c.       Ms. McHenry Plausibly Alleges Causation and Motive

"A close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720 (citations omitted).   In *Treglia*, although one year passed between the plaintiff's protected activity (filing a Division complaint) and the first act of the defendant's retaliation, in the meantime, the plaintiff had begun to cooperate in the Division's investigation. *Id.* at 721.   The court held that the temporal proximity of this cooperation, such as submitting a list of witnesses, could be used to establish the causal link between the protected activity and retaliation. *Id.*   Similarly, in this case, Defendant Murdoch disseminated the sexually explicit and doctored photographs of Ms. McHenry after she insisted on and participated in Entity Defendants' "investigation" into her complaint. (*See* FAC ¶¶ 105-106.)   Ms. McHenry participated in this "investigation" in September 2019, and was notified about Defendant Murdoch's use and distribution of sexually explicit photos of her a month later, in October 2019. (*Id.* at ¶¶ 103-107.)   As the retaliatory conduct was only a month after Ms. McHenry's participation in an investigation, a causal nexus is established by temporal proximity.

Defendant Murdoch contends Ms. McHenry has not sufficiently pled causation because the dissemination of the doctored text messages occurred months after Ms. McHenry's sexual harassment complaint, citing *Johnson v. Medisys Health Network*, 2011 WL 5222917. (Def.'s Mot. at 15.)   However, the retaliation in *Johnson* occurred eight years after the plaintiff began

complaining about unwanted sexual advances, not several months.  *Johnson v. Medisys Health Network*, 2011 WL 5222917 at \*16.

Defendant Murdoch also argues that Ms. McHenry has not established a retaliatory motive. (Def.'s Mot. at 15-16.)  "Under the NYCHRL, a plaintiff need establish only that his protected activity was a motivating factor behind the defendant's retaliatory action—not, as under Title VII, that it was a but-for cause."  *Philip v. Gtech Corp.,* 14-cv-9261, 2016 WL 3959729, at \*11 (S.D.N.Y. July 20, 2016).  A retaliatory animus can be established where harassment intensifies after the plaintiff opposes unlawful discrimination.  *See Gallo,* 585 F. Supp. 2d at 544.  Here, after Ms. McHenry rebuffed Defendant Murdoch's sexual advances and complained to their employer, his behavior completely changed towards her—he berated her on set, mocked her on social media, and distributed fraudulent text messages to tarnish her professional reputation.  (FAC at ¶¶ 81, 91, 115, 162.)  This escalation of vindictive behavior establishes a retaliatory motive.

### 4.    Plaintiff Has Plausibly Stated a Claim Against Defendant for Aiding and Abetting Discrimination and Retaliation

It is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so."  N.Y. Exec. Law § 296(6); *see also* N.Y.C. Admin. Code § 8–107(6).  Aiding and abetting claims under the NYSHRL and the NYCHRL are analyzed under the same standard, "as language of the two laws is virtually identical."  *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (internal quotations omitted).  A defendant who actually participates in the conduct giving rise to a discrimination claim may be held liable for aiding and abetting the discrimination even if the defendant lacks the authority to either hire or fire the plaintiff.  *Xiang v. Eagle Enterprises, LLC*, 19-cv-1752, 2020 WL 248941, at \*5 (S.D.N.Y. Jan. 16, 2020) (quoting *Feingold v. New*

*York*, 366 F.3d 138, 158 (2d Cir. 2004)).  An individual may also be personally liable for aiding

and abetting allegedly unlawful discrimination by an employer "where [an individual defendant's]

actions serve as the predicate for the employer's vicarious liability, so long as the employer's

conduct has also been found to be discriminatory under the NYSHRL."  *Xiang*, 2020 WL 248941,

at *5.  For example, in *Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 535 (E.D.N.Y. 2015), the

court held that a plaintiff who brings a claim under the NYSHRL based on his employer's having

encouraged condoned, or approved the discriminatory conduct of that sole employee, may rely on

the same discriminatory conduct to prove, "perhaps circularly," individual liability under the

aiding and abetting provision of the NYSHRL.

Contrary to Defendant's argument, a recent New York Court of Appeals case noted that

caselaw does *not* consider primary discrimination when assessing liability for aiding and abetting.

*Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 188 (2017) ("Notably, the Court in *NOW* did not consider

the issue of whether, separate from the [defendant], any employer or prospective employer was

liable for primary discrimination under the Human Rights Law") (citing *National Org. for Women

v. State Div. of Human Rights ["NOW"]*, 34 N.Y.2d 416 (1974)).  Nonetheless, Plaintiff posits that

she adequately states claims for principal liability under the NYSHRL and NYCHRL, as explained

further below.  Moreover, because liability is predicated at least in part upon Defendant Murdoch's

own conduct, he is liable for aiding and abetting said discrimination and retaliation.

### a. Defendant Murdoch Aided and Abetted NYSHRL Gender Discrimination and Sexual Harassment

New York Executive Law Section 296(1)(a) provides that: "It shall be an unlawful

discriminatory practice …[f]or an employer…because of an individual's…sex … to discriminate

against such individual in compensation or in terms, conditions or privileges of employment."

Sexual harassment is a form of gender discrimination.  *Williams v. New York City Dept. of Educ.*,

19-cv-1353, 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019).  To state a claim for a hostile work environment, a plaintiff must plead facts that would tend to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d. Cir. 2007).  "Whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry…" *Id.* at 114.  In *Gregory*, the Second Circuit reversed the dismissal of the plaintiff's hostile work environment claims where she alleged that her supervisor "(a) made demeaning comments about women, (b) made sexually demeaning statements, (c) initiated unwelcome physical conduct of a sexual nature, and (d) intimidated her by 'standing uncomfortably close to [her] even though [she] asked him to move away.'"  243 F.3d at 692–93.  Where the wrongdoer is not a supervisor, an employer is liable for the conduct of a coworker if it knew or should have known of the conduct, and failed to prevent it.  *Farrugia v. N. Shore U. Hosp.*, 13 Misc. 3d 740, 749 (N.Y. Sup. Ct. 2006), *adhered to on reargument* (N.Y. Sup. Ct. 2001) (citing *Priore v. New York Yankees*, 307 A.D.2d 67 (2003).

Here, Plaintiff alleges that Entity Defendants knew and had reason to know of Defendant Murdoch's harassment while it was ongoing.  (*See, e.g.,* FAC ¶ 134.)  She alleges that she reported Defendant Murdoch's "inappropriate and sexual harassing text messages" to *Un-PC*'s executive producer in January of 2019 (*Id.* at ¶ 83), and reported his "demeaning conduct" in February of 2019 (*Id.* at ¶ 84).  Despite these complaints – which can reasonably be inferred to constitute complaints of a hostile and abusive work environment because of Plaintiff's sex – Entity Defendants did nothing, and the abusive work environment continued.  (*Id.* at ¶¶ 84-86.)  After Plaintiff's third and fourth complaints (*Id.* at ¶¶ 86-87), the hostile work environment included:

accusations that she "provoked" Defendant Murdoch's sexual text messages (*Id.* at ¶ 88), public mockeries of her complaint (*Id.* at ¶¶ 91, 115), individualized sexual harassment training (*Id.* at ¶ 94), accusations that she is "drama" because of her (as yet unfiled) lawsuit against Entity Defendants (*Id.* at ¶ 99), inappropriate comments about her appearance by investigators (Entity Defendants' agents) (*Id.* at ¶ 103), and the circulation of doctored photographs purporting to be of her cleavage (*Id.* at ¶¶ 106-107).  Plaintiff also alleges that Entity Defendants had the authority to control Defendant Murdoch's employment, including by deciding whether to discipline and/or retain him, and that it failed to prevent any of his wrongful conduct subsequent to any of Plaintiff's complaints.  (*Id.* at ¶¶ 7, 9, 106-107.)  Therefore, because Entity Defendants are liable for discrimination and harassment under the NYSHRL, based on the conduct of Defendant Murdoch, Defendant Murdoch is liable for aiding and abetting discrimination under the NYSHRL.

> b.    Defendant Murdoch Aided and Abetted NYSHRL Retaliation

To establish a prima facie case for retaliation under Title VII, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d. Cir. 1996).  To prove that she engaged in protected activity, a plaintiff need not establish that the conduct she opposed was in fact unlawful, but rather may demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *See, e.g., Abel v. Bonfanti,* 625 F. Supp. 263, 267 (S.D.N.Y. 1985).

As explained above, Plaintiff alleges that her work environment worsened after she complained about Defendant Murdoch's sexual harassment.  (*See* Sect. III.C.4.a.)  An allegation that a hostile work environment "significantly worsened" after a workplace complaint may not

only support a claim of sexual harassment, but also of retaliation.  *See Gregory*, 243 F.3d at 701.

Defendant Murdoch created the increasingly abusive and hostile work environment for Plaintiff

on set.  (FAC at ¶ 83.)

Plaintiff also alleges that Defendant Murdoch "acted in concert with other Fox News

employees and supervisors to shame Ms. McHenry for making a sexual harassment complaint

against them, and to distort the results of the investigation into his and Fox News' misconduct."

(*Id.* at ¶ 185.)  Plaintiff was stripped of the role of reporting on the MLB All Star Game on Fox

News Channel (*Id.* at ¶ 93), has been effectively barred from appearing on *Watters' World* (*Id.*),

was excluded from Fox Nation's 2019 summit (*Id.* at ¶ 96), was deprived of marketing (*Id.* at ¶

97), was cut from Fox Nation's "Patriot Awards" (*Id.* at ¶ 113), and has effectively been barred

from promotional opportunities and appearances on Fox News and Fox Nation (*Id.* at ¶¶ 98, 114,

117).   It can reasonably be inferred that Defendant Murdoch's conduct resulted in further

retaliation against Plaintiff, including the allegations that Entity Defendants "refused to market

Plaintiff's show, failed to invite Ms. McHenry to key Fox News events, cut her out of Fox Nation

programs, and denied Ms. McHenry of other professional opportunities."  (*Id.* at ¶ 172.)

Therefore, because Entity Defendants are liable for retaliation under the NYSHRL, based

in part on the conduct on Defendant Murdoch and/or acting in concert with Defendant Murdoch,

Defendant Murdoch is liable for aiding and abetting retaliation under the NYSHRL.

> c.   Defendant Murdoch Aided and Abetted NYCHRL Gender
>      Discrimination

"It shall be an unlawful discriminatory practice ... [f]or an employer or an employee ...

because of the ... gender ... of any person, ... to discriminate against such person ... in terms,

conditions or privileges of employment."   N.Y.C. Admin. Code § 8–107(1)(a).   "Under the

NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims."  *Clarke*

*v. InterContinental Hotels Grp., PLC,* 2013 WL 2358596, at *11.  "[T]he plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees" because of a protected trait.  *Mihalik,* 715 F.3d at 110 (internal quotations omitted). Any unwanted conduct on the basis of a protected characteristic "imposes a different term or condition of employment," even if the harassing conduct does not rise to the level of being severe and pervasive. *Johnson v. Strive E. Harlem Empl. Group*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014).  Even 'a single comment that objectifies women ... made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable.'" *Mihalik*, 715 F.3d at 111 (internal quotations omitted).  An employer shall be liable for an employee's discriminatory conduct where "the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action" or where "the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."  N.Y.C. Admin Code § 8-107(13)(b).

Here, as explained comprehensively in Sect. III.C.2, Plaintiff alleges that Defendant Murdoch discriminated against her by engaging in "unwanted" conduct towards her on the basis of her gender.  Plaintiff alleges that she reported Defendant Murdoch's "inappropriate and sexual harassing text messages" to *Un-PC'*s executive producer in January of 2019 (*Id.* at ¶ 83), and reported his "demeaning conduct" in February of 2019 (*Id.* at ¶ 84).  The FAC alleges sufficient factual content to allows the Court to draw the reasonable inference that Entity Defendants acquiesced in Defendant Murdoch's abusive gender-based misconduct, failed to take immediate and appropriate corrective action against it, and should have known of his continued discriminatory examples yet failed to prevent it.  For example, although Plaintiff complained about

Defendant Murdoch's "demeaning conduct" in February of 2019, Defendant did not investigate his conduct, which only worsened; in April of 2019, Defendant Murdoch yelled and cursed at Plaintiff on set, in front of their show guest.  (*Id.* at ¶ 86.)  After two additional complaints by Plaintiff, Defendant Murdoch was promoted to his own show.  (*Id.* at ¶ 89.)  However, Entity Defendants failed to prevent Defendant Murdoch's continued misconduct towards Plaintiff: he publicly mocked her complaint (*Id.* at ¶¶ 91, 115) and circulated doctored photographs purporting to be of her cleavage (*Id.* at ¶¶ 106-107).  Entity Defendants instructed Plaintiff to direct her complaints to her attorney.  (*Id.* at ¶ 91.)

Therefore, because Entity Defendants are liable for discrimination under the NYCHRL, based on the conduct on Defendant Murdoch, Defendant Murdoch is liable for aiding and abetting discrimination under the NYCHRL.

>  d.    Defendant Murdoch Aided and Abetted NYCHRL Retaliation

A plaintiff alleging a claim for retaliation under the NYCHRL must allege that (1) she took an action to oppose the defendant's discrimination, and (2) as a result of the action, the defendant engaged in conduct that was "reasonably likely to deter a person from engaging in such action." *See Mihalik,* 715 F.3d at 112.  As the appellate division of the New York's Supreme Court explained:

> In assessing retaliation claims that involve neither ultimate actions nor materially adverse changes in terms and conditions of employment, it is important that the assessment be made with a keen sense of workplace realities, of the fact that the "chilling effect" of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct in light of those realities.  Accordingly, the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable.  On the contrary, no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct

> was, in the words of the statute, "reasonably likely to deter a person
> from engaging in protected activity."

*Williams v. New York City Hous. Auth.*, 61 A.D.3d at 71.

Here, Plaintiff alleges that Defendant Murdoch retaliated against her for rebuffing his sexual advances and for complaining about his sexual harassment, by "ignoring her, cursing at her and berating her on set." (FAC at ¶ 162.) She also alleges that he retaliated against her by doctoring a sexually explicit photograph of her and circulating it to Fox News employees, publicly mocking her sexual harassment complaint, and disclosing confidential and/or untruthful information about her complaint to other Fox News employees and supervisors. (*Id.*) The jury is "best suited" to evaluate whether this conduct was "reasonably likely to deter a person from engaging in protected activity." *Williams v. New York City Hous. Auth.*, 61 A.D.3d at 71.

Entity Defendants are strictly liable for Defendant Murdoch's retaliatory conduct under the NYCHRL. N.Y.C. Admin. Code § 8-107(13)(a). Moreover, as explained above in Section III.C.3.b, Plaintiff also alleges that Defendant Murdoch "acted in concert with other Fox News employees and supervisors to shame Ms. McHenry for making a sexual harassment complaint against them, and to distort the results of the investigation into his and Fox News' misconduct." (*Id.* at ¶ 185.) Therefore, because Entity Defendants are liable for retaliation under the NYCHRL, based in part on the conduct on Defendant Murdoch and/or acting in concert with Defendant Murdoch, Defendant Murdoch is liable for aiding and abetting retaliation under the NYCHRL.

For the foregoing reasons, Defendant Murdoch is liable for aiding and abetting Entity Defendants' discriminatory and/or retaliatory conduct, either on the grounds that their liability rests on his own conduct, and/or that he participated in conduct giving rise to the claims against them.

### D. THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to prevail under the tort of intentional infliction of emotional distress ("IIED"), a plaintiff must prove four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Doe v. Doe*, 16-cv-0332, 2017 WL 3025885, at \*4 (S.D.N.Y. July 14, 2017) (internal citations omitted). The conduct proscribed by IIED is "as limitless as the human capacity for cruelty." *Id.* at \*4. A plaintiff can prevail on an IIED claim by showing she was "the target of a planned program of harassment or threats, accompanied by vindictiveness, taunting or derision." *Bonner v. Guccione*, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) (internal quotations omitted).

Defendant Murdoch only disputes the first element of "extreme and outrageous conduct." (Def.'s Mot. at 24.) Ms. McHenry has sufficiently pled extreme and outrageous conduct sufficient to survive a motion to dismiss on her IIED claim. She alleges that Defendant Murdoch verbally attacked her, subjected her to months of lewd and harassing text messages, and distributed a photograph purporting to be of her breasts to her colleagues. (FAC ¶¶ 84, 91, 105-106, 162.) Spreading false allegations about a coworker to damage her career meets the extreme and outrageous element at the motion to dismiss stage. *See Scotto v. City of New York*, 18-cv-04228, 2019 WL 6701919, at \*8 (S.D.N.Y. Dec. 9, 2019) (complaint alleged that defendant made false statements that the plaintiff was medically unfit to perform his job); *see also Nigro v. Pickett*, 39 A.D.3d 720, 721–22, 833 N.Y.S.2d 655, 656 (2d Dept. 2007) (reversing summary for defendant on IIED claim as plaintiffs alleged that defendant threatened publicize a false sexual harassment allegation). Further, in cases where the defendant spreads sexually explicit imagery of the plaintiff, the extreme and outrageous prong is "easily met." *See Doe v. Doe*, 2017 WL 3025885, at \*6 (the

23

defendant uploaded a video of himself and plaintiff having sexual intercourse on the internet without her consent).  Moreover, "when the actor's conduct is extraordinarily vindictive, it may be regarded as so extreme and so outrageous as to give rise to a cause of action for emotional distress."  *Id.* at *5.  Defendant Murdoch circulated false and sexually explicit photos of Ms. McHenry's purportedly near-naked breasts vindictively, to punish her for her sexual harassment allegations.  (FAC at ¶¶ 107, 162.)  This conduct alone would establish the extreme and outrageous element of Ms. McHenry's IIED claim.

Moreover, sexual advances and verbal harassment can also meet the first element of an IIED claim.  "There is no question that in New York sexual harassment can give rise to a claim for intentional infliction of emotional distress."  *Bonner*, 916 F. Supp. at 276.  In *Bonner*, the district court held that the plaintiff had stated an IIED claim sufficient to survive a motion to dismiss after she alleged Defendant berated her at the office including calling her "incompetent" and "weird," and referring to her work as "pieces of shit."  *See id. at* 277-278.  Other cases in this district have also found that claims of sexual advances were sufficient to survive an IIED dispositive motion. *See, e.g., LaRocca v. Collen IP, Intellectual Prop. Law, P.C.*, 08-cv-6274, 2009 WL 10435869, at *3 (S.D.N.Y. May 6, 2009) (holding that allegations that the defendant made sexual comments towards her, asked her about her sex life, and attempted to kiss her were sufficient to survive defendants' motion to dismiss plaintiff's IIED claim); *Shapiro v. AEO/Ricoh, Inc.,* 96-cv-7274, 1997 WL 452026, at *5 (S.D.N.Y. Aug. 7, 1997) (holding that "in light of the allegations of sexually explicit remarks, looks and innuendoes, touching and a purported effort to persuade [plaintiff] to resign, there exists a genuine issue of material fact as to whether the alleged statements and behavior directed toward Shapiro rise to the level of being extreme and outrageous.").  Viewing all of these acts together, Defendant Murdoch's campaign to sexually

24

harass and then vindictively punish Ms. McHenry for opposing his advances states a cause of action for IIED sufficient to survive the motion to dismiss stage.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.


DATED: May 4, 2020                          Respectfully submitted,

                                            **THE BLOOM FIRM**


                                            By: <u>/s/ Arick Fudali</u>
                                            Lisa Bloom
                                            Arick Fudali
                                            Anna Levine-Gronningsater
                                            Sarah Bloom
                                            Attorneys for Plaintiff Brittany McHenry