## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BRITTANY MCHENRY,
Plaintiff,

-against-

FOX NEWS NETWORK, LLC; FOX
CORPORATION; GEORGE MURDOCH (A/K/A
"TYRUS"); JENNIFER RAUCHET; JOHN
FINLEY; and MONICA MEKEEL,

Defendants.

Case Number: 1:19-CV-11294-PAE

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS FOX CORPORATION, JENNIFER RAUCHET, JOHN FINLEY AND
## MONICA MEKEEL'S MOTION TO DISMISS THE PLAINTIFF'S FIRST AMENDED
## COMPLAINT

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  BRIEF STATEMENT OF FACTS ....................................................................... 1

III. ARGUMENT ........................................................................................................ 3

  A. LEGAL STANDARD ......................................................................................... 3

  B. THE NYSHRL AND NYCHRL MUST BE LIBERALLY CONTRUED ........... 4

  C. THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT
  DEFENDANT FOX CORP. AND ITS SUBSIDIARY FOX NEWS CONSTITUTE
  A "SINGLE EMPLOYER" ...................................................................................... 5

  D. MS. MCHENRY HAS PLAUSIBLY STATED A CLAIM FOR
  DISCRIMINATION AND RETALIATION UNDER THE NYSHRL AND
  NYCHRL ................................................................................................................ 10

    1. *Defendant Fox Corp.'s Argument that Plaintiff Has Failed to
    Adequately Plead Claims for Discrimination and Retaliation Should Be
    Deemed Waived* ................................................................................................ 10

    2. *Plaintiff Has Adequately Pled Claims for Discrimination and
    Retaliation Under the NYSHRL* ...................................................................... 11

      a.  NYSHRL Gender Discrimination and Sexual Harassment ........ 11

      b.  NYSHRL Retaliation .................................................................. 13

    3. *Plaintiff Has Adequately Pled Claims for Discrimination and
    Retaliation Under the NYCHRL* ..................................................................... 14

      a.  NYCHRL Gender Discrimination .............................................. 14

      b.  NYCHRL Retaliation ................................................................. 16

  E. MS. MCHENRY HAS PLAUSIBLY STATED A CLAIM FOR AIDING AND
  ABETTING DISCRIMINATION UNDER NYSHRL AND NYCHRL ................. 18

    1. *The First Amended Complaint Plausibly Alleges that Defendant Fox
    Corp. Aided and Abetted Discrimination and Retaliation* ....................... 18

*2. The First Amended Complaint Plausibly Alleges that Individual Defendants Aided and Abetted Discrimination and Retaliation*............. 19

    a.   Defendant Finley ..................................................................... 21

    b.   Defendant Mekeel ................................................................... 22

    c.   Defendant Rauchet .................................................................. 23

IV.    CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                         Page(s)

*Abel v. Bonfanti*,
   625 F. Supp. 263 (S.D.N.Y. 1985) ...................................................................................13

*Anderson v. Davis Polk & Wardwell LLP*,
   850 F. Supp. 2d 392 (S.D.N.Y 2012)................................................................................20

*Alvarez v. 40 Mulberry Rest., Inc.*,
   11-cv-9107, 2012 WL 4639154 (S.D.N.Y. Oct. 3, 2012)..................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................3

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d. Cir. 2014)...........................................................................................6, 7

*Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*,
   12-cv-2947, 2013 WL 1193056 (E.D.N.Y. Mar. 22, 2013) ..................................... *passim*

*Clarke v. InterContinental Hotels Grp., PLC*,
   No. 12-cv-2671, 2013 WL 2358596 (S.D.N.Y. May 30, 2013) ........................................14

*Cook v. Arrowsmith Shelburne, Inc.*,
   69 F.3d 1235 (2d. Cir. 1995)..............................................................................................6

*Dodd v. City U. of New York*,
   17-cv-9932, 2018 WL 4284289 (S.D.N.Y. Sept. 7, 2018) ...............................................19

*Donahue v. Asia TV USA Ltd.*,
   208 F. Supp. 3d 505 (S.D.N.Y. 2016)................................................................................7

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d. Cir. 2010)............................................................................................21

*Farrugia v. N. Shore U. Hosp.*,
   13 Misc. 3d 740, 820 N.Y.S.2d 718 (N.Y. Sup. Ct. 2006) ..............................................12

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004)........................................................................................18, 19

*Frank v. U.S. W., Inc.*,
   3 F.3d 1357 (10th Cir. 1993) ..............................................................................................9

iii

*Fried v. LVI Services, Inc.*,
  10-cv-9308, 2011 WL 2119748 (S.D.N.Y. May 23, 2011) ............................................5, 8

*Fowler v. Scores Holding Co.*,
  677 F. Supp. 2d 673 (S.D.N.Y. 2009) ................................................................................4

*Gregory v. Daly*,
  243 F.3d 687 (2d. Cir. 2001) ......................................................................................12, 13

*Griffin v. Sirva, Inc.*,
  29 N.Y.3d 174 (2017) .......................................................................................................18

*Harte v. Woods Hole Oceanographic Institute*,
  495 F. App'x. 171 (2d Cir. 2012) ....................................................................................10

*Johnson v. Strive E. Harlem Empl. Group*,
  990 F. Supp. 2d 435 (S.D.N.Y. 2014) .............................................................................14

*Kilkenny v. Greenberg Traurig, LLP*,
  05-cv-6578, 2006 WL 1096830 (S.D.N.Y. Apr. 26, 2006) ................................................9

*Lewis v. Triborough Bridge and Tunnel Auth.*,
  77 F. Supp. 2d 376 (S.D.N.Y. 1999) ................................................................................20

*Margerum v. City of Buffalo*,
  24 N.Y.3d 721 (2015) .........................................................................................................4

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ...................................................................................... *passim*

*Mills v. Polar Molecular Corp*,
  12 F.3d 1170 (2d Cir. 1993) ...............................................................................................3

*Morgan v. NYS Atty. Gen.'s Office*,
  11-cv-9389, 2013 WL 491525 (S.D.N.Y. Feb. 08, 2013) ................................................20

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007) ........................................................................................11, 20

*Perez v. Westchester Foreign Autos, Inc.*,
  11-cv-6091, 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013) ..........................................5, 6, 7

*Priore v. New York Yankees*,
  307 A.D.2d 67 (1st Dep't 2003) ......................................................................................12

*Raneri v. McCarey,*
    712 F.Supp.2d 271 (S.D.N.Y.2010)..........................................................................18

*Reed v. A.W. Lawrence & Co., Inc.,*
    95 F.3d 1170 (2d. Cir. 1996)....................................................................................13

*Ruhling v. Tribune Co.,*
    04-cv-2430, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007).............................................9

*Ruiz v. New Avon LLC,*
    18-cv-9033, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019), appeal
    withdrawn sub nom., 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22, 2020) .......................8

*Scaglione v. Chappaqua Cent. School Dist.,*
    209 F. Supp. 2d 311 (S.D.N.Y. 2002).....................................................................5, 7

*Schanfield v. Sojitz Corp. of America,*
    663 F. Supp. 2d 305 (S.D.N.Y. 2009).......................................................................18

*Sibley Memorial Hospital v. Wilson,*
    488 F.2d 1338 (D.C. Cir. 1973) .............................................................................5, 6

*Snyder v. Advest, Inc.,*
    06-cv-1426, 2008 WL 4571502 (S.D.N.Y. June 8, 2008)..........................................9

*Spirt v. Teachers Ins. & Annuity Ass'n,*
    691 F.2d 1054 (2d Cir.1982), *vacated and remanded on other grounds,*
    463 U.S. 1223 (1983)..................................................................................................5

*St. Jean v. Orient-Express Hotels Inc.,*
    963 F. Supp. 2d 301 (S.D.N.Y. 2013)....................................................................8, 9

*Tolbert v. Queens College,*
    242 F.3d 58 (2d Cir. 2001).......................................................................................10

*Tutor Time Learning Centers, LLC v. GKO Group, Inc.,*
    13-cv-2980, 2013 WL 5637676 (S.D.N.Y. Oct. 15, 2013)......................................11

*Wang v. Phoenix Satellite TV US, Inc.,*
    976 F. Supp. 2d 527 (S.D.N.Y. 2013).......................................................................4

*Whitley v. Bowden,*
    17-cv-3564, 2018 WL 2170313 (S.D.N.Y. May 10, 2018)......................................10

*Williams v. New York City Dept. of Educ.,*
    19-cv-1353, 2019 WL 4393546 (S.D.N.Y. Aug. 28, 2019) ....................................11

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ...................................................14, 16, 17

*Xiang v. Eagle Enterprises, LLC*,
    19-cv-1752, 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ...........................................18, 19

*Zambrano-Lamhaouhi v. New York City Bd. of Educ.*,
    866 F. Supp. 2d 147 (E.D.N.Y. 2011) ...........................................................................18

<u>Statutes and Other Authorities</u>

Federal Rule of Civil Procedure 12 .................................................................................3, 4, 7

N.Y. Exec. Law § 292 ..........................................................................................................18

N.Y. Exec. Law § 296 ..............................................................................................17, 18, 20

N.Y.C. Admin. Code § 8–102 ...............................................................................................18

N.Y.C. Admin. Code § 8–107 ...................................................................................... *passim*

Plaintiff Brittany McHenry hereby submits this Memorandum of Law in Opposition to Defendants Fox Corporation, Jennifer Rauchet, John Finley, and Monica Mekeel's Motion to Dismiss the Amended Complaint.

## I.    INTRODUCTION

Defendant Fox Corporation derides Plaintiff for not only suing "her purported employer" and "her purported harasser," but also Fox Corporation (the parent company and Plaintiff's ultimate employer) and the high-ranking individuals who could not be bothered to stop her harasser.  Indeed, Defendants Fox Corporation, Jennifer Rauchet, John Finley, and Monica Mekeel not only turned a blind eye to Plaintiff's ordeal, but they also retaliated against her for daring to stand up for herself.  This lawsuit is the perfect example of why corporations and corporate employees must be held liable for participating in and condoning discrimination.  The law allows for remedies against the instant defendants, and Plaintiff will pursue these remedies to the full extent of the law.

## II.    BRIEF STATEMENT OF FACTS

In July 2018, Fox News Network, LLC ("Fox News") hired Plaintiff Brittany McHenry ("Plaintiff" or "Ms. McHenry") to host *Un-PC*, a talk show on the Fox Nation streaming service, with co-host Defendant George Murdoch.  (First Amended Complaint ["FAC"] at ¶ 64.) Beginning in the fall of 2018, Defendant Murdoch sexually harassed Ms. McHenry, through unwelcome sexual advances and lewd, inappropriate text messages.  (*See id.* at ¶¶ 71-82.)  He threatened to send her a "dick pic" over text message, told her he liked her buttocks and legs, and speculated as to what she would be like after sexual intercourse.  (*Id.* at ¶¶ 2, 71-82.)  Ms. McHenry did not consent to Defendant Murdoch's sexual advances and his harassment was at all times unwelcome by Ms. McHenry.  (*Id.* at ¶ 82.)

1

Defendant Fox Corporation ("Defendant Fox Corp." or "Defendant") is the ultimate parent company and sole member of Fox News.  (FAC ¶ 6) (collectively, Fox Corp. and Fox News are referred to as "Entity Defendants").  All significant decisions made by Fox News must be approved by Defendant Fox Corp., including hiring and firing decisions.  (*Id.* at ¶ 7.)  Defendant Fox Corp. investigates complaints made to Fox News.  (*Id*.)  Defendant Fox Corp. establishes the operating practices for Fox News and controls the discipline, pay, insurance, records, and supervision of Fox News employees. (*Id.*)  Defendant Fox Corp., as the ultimate parent company of Fox News Network, LLC, hired Ms. McHenry and all of the named individual defendants in this action.  (*Id.* at ¶¶ 9, 10, 11, 12, 64.)

Ms. McHenry resisted and did not submit to Defendant Murdoch's sexual advances.  (*Id.* at ¶ 83.)  He responded by creating an abusive work environment, yelling and cursing at her on set.  (*Id.*)  Ms. McHenry was distraught by Defendant Murdoch's retaliatory behavior, and complained about his sexual harassment to Fox News at on at least four separate occasions: three times to *Un-PC*'s executive producer, Defendant Jennifer Rauchet ("Defendant Rauchet"), and once to Fox News Vice President Defendant John Finley ("Defendant Finley").  (*Id.* at ¶¶ 83-84, 86-87.)  She also complained about Defendant Murdoch's retaliation against her.  (*Id.*)  After Ms. McHenry complained to Defendant Finley in April 2019, she was contacted by Defendant Fox Corp.'s Human Resources representative, Defendant Monica Mekeel ("Defendant Mekeel").  (*Id.* at ¶ 88) (collectively, Defendants Rauchet, Finley, and Mekeel are "Individual Defendants").  Defendant Mekeel essentially asked Ms. McHenry what she had done to provoke Defendant Murdoch's sexual harassment.  (*See id.*)

Fox News did not discipline Defendant Murdoch, and he was effectively promoted to his own show after Ms. McHenry's sexual harassment and retaliation complaints.  (*Id.* at ¶ 89.)

Defendant Murdoch has publicly mocked Ms. McHenry's complaints.  (*Id.* at ¶¶ 91, 115.)  Since Ms. McHenry's complaints, Fox News has retaliated against her, including by cutting her show appearances on Fox News Channel, refusing to market her Fox Nation show, and shutting her out of the network.  (*Id.* at ¶¶ 93-99, 113-122.)  Defendant Murdoch's appearances on Fox News have not decreased.  (*See id.* at ¶¶ 93 ,98, 120.)  Now, Fox News promotes and markets every other Fox Nation host other than Ms. McHenry, the only known Fox Nation employee to have made a sexual harassment complaint.  (*See id.* at ¶¶ 98, 114, 119, 122.)

In November 2019, Defendant Rauchet told a Fox News guest to avoid Ms. McHenry because of her sexual harassment allegations.  (*See id.* at ¶ 99.)  Defendant Rauchet has also cut Ms. McHenry out of Fox News programs since her sexual harassment complaints, and has refused to speak to Ms. McHenry even about work-related issues, even though she is still Ms. McHenry's executive producer.  (*See id.* at ¶¶ 113, 121.)  She has also claimed that Fox News has already hired another host to replace Ms. McHenry.  (*Id.* at ¶ 118.)

## III.   <u>ARGUMENT</u>

### A.  LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993).  In order to survive a 12(b)(6) motion to dismiss, the complaint must sufficiently plead facts to "state a claim to relief that is *plausible on its face*."  335 F. Supp. 3d at 513 (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) [internal citations omitted]).  A claim's facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  In order to survive a motion to dismiss under

3

Rule 12(b)(6), employment claims "need not need to contain specific facts establishing a prima facie case of employment discrimination," rather, the complaint must only be "facially plausible, and must give fair notice to the defendants of the basis for the claim." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).

## B.  THE NYSHRL AND NYCHRL MUST BE LIBERALLY CONSTRUED

Historically, the standards of recovery under the New York State Human Rights Law ("NYSHRL") have been "in nearly all instances identical to Title VII and other federal law." *Margerum v. City of Buffalo,* 24 N.Y.3d 721, 731 (2015) (internal citations omitted).  However, in 2019, the NYSHRL was amended to direct courts to construe the NYSHRL liberally for the accomplishment of the "remedial" purposes thereof, "regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  Therefore, Title VII should not be applied to the NYSHRL where it is not construed liberally.

Additionally, under the Restoration Act of 2005, courts must interpret the New York City Human Rights Law ("NYCHRL") independently from the NYSHRL, which represents a "a floor below which the City's Human Rights law cannot fall."  *Wang v. Phoenix Satellite TV US, Inc.*, 976 F. Supp. 2d 527, 539 (S.D.N.Y. 2013) (internal citations omitted).  "Therefore, claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL."  *Id.*  As explained below, Defendants' motion should be denied as to Plaintiff's "floor level" NYSHRL claims, which arguments necessarily apply to her NYCHRL claims, we as to Plaintiff's NYCHRL claims on independent grounds.

## C. THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANT FOX CORP. AND ITS SUBSIDIARY FOX NEWS CONSTITUTE A "SINGLE EMPLOYER"

Defendant Fox Corp. argues that the FAC does not plead a claim for relief against it on the grounds that it fails to plausibly allege that it is her single employer along with Fox News. (Defs.' Mot. p. 8.) Whether a particular defendant can be considered a plaintiff's employer is a fact-specific inquiry, therefore the proper inquiry on a motion to dismiss is "whether a defendant has been put on a notice of the theory of employer liability." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-cv-6091, 2013 WL 749497, at *7–8 (S.D.N.Y. Feb. 28, 2013). The Second Circuit has held that "the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law." *Fried v. LVI Services, Inc.*, 10-cv-9308, 2011 WL 2119748, at *3 (S.D.N.Y. May 23, 2011) (quoting *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982), *vacated and remanded on other grounds,* 463 U.S. 1223 (1983)); *see also Scaglione v. Chappaqua Cent. School Dist.*, 209 F. Supp. 2d 311, 318 (S.D.N.Y. 2002) ("[A] Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities."). The Second Circuit follows the landmark District of Columbia Circuit case *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1342 (D.C. Cir. 1973), which stands for the proposition "that Title VII prohibits a defendant's interference 'with an individual's employment opportunities with *another employer.*'" *Scaglione*, 209 F. Supp. 2d at 318 (internal quotations omitted) (emphasis in original). "To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an

5

individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." *Id.* at 318-319 (quoting *Sibley,* 488 F.2d at 1341).

In the context of parent-subsidiary liability, courts consider the following factors when determining the existence of a single, integrated enterprise: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d. Cir. 1995); *see also Perez*, 2013 WL 749497, at *7. As explained below, Plaintiff has sufficiently alleged all four factors; however, the most important factor is whether the plaintiff adequately alleges centralized control over labor relations. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d. Cir. 2014). The central question with regard to this fact is, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* (citing *Cook* at 1240). The plaintiff "need not allege that the parent exercises 'total control or ultimate authority over hiring decisions,' so long as he alleges that there is 'an amount of participation [by the parent] that is sufficient and necessary to the total employment process.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d. Cir. 2014) (quoting *Cook,* 69 F.3d at 1241).

In *Cook*, the Second Circuit reversed summary judgment for a parent corporation because whether the parent company could be considered an employer of its subsidiary's employees was a question of fact. 69 F.3d at 1241. Plaintiff adduced sufficient evidence to show the requisite degree of centralized control of labor relations where (a) the parent processed applications for employment for the subsidiary and approved personnel status reports; (b) the subsidiary "cleared all major employment decisions" with the parent; and (c) the plaintiff was hired and fired by employees of the parent. *Id.* Similarly, in this case, at this early stage of the litigation, Plaintiff

alleges that: Fox Corporation is the ultimate parent company and sole member of Fox News Network, LLC (FAC ¶ 6); all significant decisions made by Fox News Network, LLC need to be approved by Fox Corporation including hiring and firing decisions (*Id.* at ¶ 7); Fox Corporation establishes the operating practices for Fox News Network, LLC and controls the discipline, pay, insurance, records, and supervision of Fox News Network, LLC employees (*Id.*); and that Fox Corporation, as the ultimate parent company of Fox News Network, LLC, hired Ms. McHenry and all of the named individual defendants in this action (*Id.* at ¶¶ 9, 10, 11, 12, 64). These allegations are sufficient to put Defendant "on notice" of Plaintiff's theory of employer liability (*Perez*, 2013 WL 749497 at *7–8), namely that Fox Corp. and Fox News are her single employer (FAC ¶ 8), and as such that Defendant Fox Corp. is in a position "to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with" Plaintiff's employment opportunities with Fox News (*Scaglione*, 209 F. Supp. 2d at 318-319).

Moreover, Plaintiff's allegations regarding Defendant Fox Corp.'s degree of control over Fox News (FAC ¶ 7) implicate Defendant Fox Corp. in the very retaliation about which Plaintiff complains, in particular that Defendant Murdoch was retained and rewarded with his own show (FAC at ¶¶ 9, 89) while she was systematically shunned (FAC ¶ 109). *See Brown*, 756 F.3d at 228 (reversing dismissal pursuant to Rule 12(b)(6) where the plaintiff alleged that the parent company "closely directed the operations of its wholly owned subsidiary" and its approval "was required as to all significant actions," including actions lying at the core of the discrimination charges); *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 518–19 (S.D.N.Y. 2016) (finding plaintiff alleged sufficient "commonality of hiring, firing, and supervision" between plaintiff's direct employer and another corporate defendant where board member of that corporate defendant

regularly met with plaintiff to review his performance evaluations and recommended a replacement for plaintiff after telling him he should retire).

Plaintiff also alleges facts showing that Defendant exercises significant control over Fox News, including the fact that Defendant's Senior Vice President of Human Resources for Fox Corp. purportedly investigated her complaint to Fox News. (FAC ¶.) In *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 309–10 (S.D.N.Y. 2013), the court denied the controlling company's motion to dismiss where the plaintiff alleged that the controlling company made hiring decisions for her direct employer, and the controlling company's HR director investigated plaintiff's claims, interviewed her, and personally fired her. *Compare with Ruiz v. New Avon LLC*, 18-cv-9033, 2019 WL 4601847, at *13 n.12 (S.D.N.Y. Sept. 22, 2019), *appeal withdrawn sub nom.*, 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22, 2020) ("Plaintiffs' most detailed allegation regarding the interrelationship between Defendants' operations is that the 'Company continues to brand itself collectively as 'Avon' in connection with its North American business.'").

Relying primarily on *Fried,* Defendant argues that Plaintiff's "bald allegations" fall short of adequately alleging single employment. (Defs.' Mot. at 9.) However, the court in *Fried* explicitly rejected the plaintiff's *theory of centralized control*, which was that minority shareholder defendants "exercised control over plaintiff's employment through the actions of the representatives that [defendants] appointed to the Board…" *Fried v. LVI Services, Inc.*, 10-cv-9308, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011). Because directors and officers holding positions with both a parent and a subsidiary "can and do 'change hats' to represent the two corporations separately," they do not necessarily act as agents of the shareholders when acting as board members. Unlike *Fried*, Plaintiff in this case does not allege that the parent and subsidiary constitute a single employer based on Board membership.

Defendant also relies on *Kilkenny v. Greenberg Traurig, LLP*, 05-cv-6578, 2006 WL 1096830 (S.D.N.Y. Apr. 26, 2006), which is, again, inapposite.  In *Kilkenny*, a Greenberg Traurig paralegal was assigned by the law firm to provide services to its client, Morgan Stanley.  Although the paralegal alleged that Morgan Stanley was "involved in controlling [his] employment situation" and "directed [his] work on many occasions," he did not provide any "supported allegations" that Morgan Stanley "exerted actual control over his hiring, firing, discipline, pay, or supervision."  *Id.* at *5.  Here, Plaintiff is not arguing that legal clients are single employers of attorneys or paralegals.  She does allege, however, that Fox Corp. "exerted actual control" over hiring, discipline, pay, and supervision at Fox Nation.  (FAC at ¶ 7.)

A string of cases cited by Defendant are adjudications of motions for summary judgment, including *Snyder v. Advest, Inc*., 06-cv-1426, 2008 WL 4571502 (S.D.N.Y. June 8, 2008), *Ruhling v. Tribune Co*., 04-cv-2430, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007), and the Tenth Circuit ruling in *Frank v. U.S. W., Inc*., 3 F.3d 1357 (10th Cir. 1993).  In analyzing motions for summary judgment, the court has an established record and evidence obtained through the discovery process; here, "[b]ecause there has been no discovery ... Plaintiff 'need only make legally sufficient allegations of jurisdiction through its pleadings and affidavits in order to survive a motion to dismiss.'"  *St. Jean*, 963 F. Supp. 2d at 309.

Finally, Defendant argues that Fox Corp. "did not even become a standalone company or Fox News Network's parent until March 2019."  (Defs.' Mot. at 10.)  Insofar as a footnote in Defendant's opposition papers may be considered a request for judicial notice of the contents of Fox Corp.'s Form 8-K filing (*Id.* at 10 n.9), the 8-K filing demonstrates that it is the surviving entity of 21st Century Fox as the result of a merger (Defs. Mot., Ex. B, ECF # 45-2), and as such is a mere continuation of its predecessor.  Whether successor liability applies involves issues of

fact.  *See Alvarez v. 40 Mulberry Rest., Inc.*, 11-cv-9107, 2012 WL 4639154, at *5 (S.D.N.Y. Oct. 3, 2012).  Therefore, the issue is not appropriately addressed in a motion to dismiss.

For the foregoing reasons, Plaintiff respectfully requests that the Court find she has sufficiently alleged that Defendants Fox Corp. and Fox News constitute a single employer, and deny Defendant's motion to dismiss on this ground.

**D.  MS. MCHENRY HAS PLAUSIBLY STATED A CLAIM FOR DISCRIMINATION AND RETALIATION UNDER THE NYSHRL AND NYCHRL**

*1. Defendant Fox Corp.'s Argument that Plaintiff Has Failed to Adequately Plead Claims for Discrimination and Retaliation Should Be Deemed Waived*

Defendant Fox Corp. argues, in a footnote, that "[e]ven if Plaintiff had adequately pleaded that Fox Corp. and Fox News Networks were, together, her single employer, the Amended Complaint still fails to state a claim against Fox Corp. for the separate and independent reason that it fails to allege that Fox Corp., as an alleged single employer, engaged in any actionable conduct." (Defs.' Mot. at 12 n.12.)  Defendant's perfunctory argument should be deemed waived.  *Whitley v. Bowden*, 17-cv3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018) (deeming an undeveloped argument waived).  Plaintiff respectfully requests that the argument that Defendant did not did not engage in any actionable conduct be deemed waived by the Court.  *Id.; see also Harte v. Woods Hole Oceanographic Institute,* 495 F. App'x. 171, 173 n.1 (2d Cir. 2012); *Tolbert v. Queens College,* 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Tutor Time Learning Centers, LLC v. GKO Group, Inc.*, 13-cv-2980, 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013).

Defendant Fox Corp.'s perfunctory conclusion is supported by one additional sentence, arguing that: "The Amended Complaint does not plausibly allege any facts establishing that Fox Corp. or any of its employees knew or had reason to know of the purported harassment while it was ongoing, that it participated in the adverse actions Plaintiff's alleges to have suffered, or that it should otherwise be liable for the alleged co-worker harassment by [Murdoch], an individual with whom it has no relationship."  (Defs.' Mot. at 12 n.12.)  Defendant is mistaken both as to the allegations and the law.  In the event that the Court chooses to address Defendant Fox Corp.'s arguments on these grounds, Plaintiff addresses said arguments substantively.

2.   *Plaintiff Has Adequately Pled Claims for Discrimination and Retaliation Under the NYSHRL*

a.   NYSHRL Gender Discrimination and Sexual Harassment

New York Executive Law Section 296(1)(a) provides that: "It shall be an unlawful discriminatory practice …[f]or an employer…because of an individual's…sex … to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Sexual harassment is a form of gender discrimination.  *Williams v. New York City Dept. of Educ.*, 19-cv-1353, 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019).  To state a claim for a hostile work environment, a plaintiff must plead facts that would tend to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex."  *Patane v. Clark*, 508 F.3d 106, 113 (2d. Cir. 2007).  "Whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry…"  *Id.* at 114.

In *Gregory v. Daly*, 243 F.3d 687, 692–93 (2d. Cir. 2001), *as amended* (Apr. 20, 2001), the Second Circuit reversed the dismissal of the plaintiff's hostile work environment claims where she alleged that her supervisor "(a) made demeaning comments about women, (b) made sexually demeaning statements, (c) initiated unwelcome physical conduct of a sexual nature, and (d) intimidated her by 'standing uncomfortably close to [her] even though [she] asked him to move away.'" Where the wrongdoer is not a supervisor, an employer is liable for the conduct of a coworker if it knew or should have known of the conduct, and failed to prevent it. *Farrugia v. N. Shore U. Hosp.*, 13 Misc. 3d 740, 749, 820 N.Y.S.2d 718 (N.Y. Sup. Ct. 2006), *adhered to on reargument,* (N.Y. Sup. Ct. 2001) (citing *Priore v. New York Yankees*, 307 A.D.2d 67 (1st Dep't 2003)).

Plaintiff alleges that Defendant Fox Corp. knew and had reason to know of Defendant Murdoch's harassment while it was ongoing. (*See, e.g.,* FAC ¶ 134.) She alleges that she reported Defendant Murdoch's "inappropriate and sexual harassing text messages" to *Un-PC'*s executive producer in January of 2019 (*Id.* at ¶ 83), and reported his "demeaning conduct" in February of 2019 (*Id.* at ¶ 84). Despite these complaints – which can reasonably be inferred to constitute complaints of a hostile and abusive work environment because of Plaintiff's sex – Defendant did nothing, and the abusive work environment continued. (*Id.* at ¶¶ 84-86.) After Plaintiff's third and fourth complaints (*Id.* at ¶¶ 86-87), the hostile work environment escalated, including: accusations that she "provoked" Defendant Murdoch's sexual text messages (*Id.* at ¶ 88), public mockeries of her complaint (*Id.* at ¶¶ 91, 115), individualized sexual harassment training (*Id.* at ¶ 94), accusations that she is "drama" because of her (as yet unfiled) lawsuit against Defendants (*Id.* at ¶ 99), inappropriate comments about her appearance by investigators (Entity Defendants' agents) (*Id.* at ¶ 103), and the circulation of doctored photographs purporting to be of her cleavage

(*Id.* at ¶¶ 106-107).  Plaintiff also alleges that Defendant had the authority to control Defendant

Murdoch's employment, including by deciding whether to discipline and/or retain him, and that it

failed to prevent any of his wrongful conduct subsequent to any of Plaintiff's complaints.  (*Id.; see*

*also id.* at ¶¶ 7, 9.)

        b.    NYSHRL Retaliation

To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee

was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee

suffered an adverse employment action; and (4) there was a causal connection between the

protected activity and the adverse employment action.  *Reed v. A.W. Lawrence & Co., Inc.*, 95

F.3d 1170, 1178 (2d. Cir. 1996).  To prove that she engaged in protected activity, a plaintiff need

not establish that the conduct she opposed was in fact unlawful, but rather may demonstrate a

"good faith, reasonable belief that the underlying challenged actions of the employer violated the

law."  *See, e.g., Abel v. Bonfanti,* 625 F. Supp. 263, 267 (S.D.N.Y.1985).

Plaintiff alleges that her work environment worsened after she complained about

Defendant Murdoch's sexual harassment.  (*See* Sects. III.D.2.a., III.D.3.)  An allegation that a

hostile work environment "significantly worsened" after a workplace complaint may not only

support a claim of sexual harassment, but also of retaliation.  *See Gregory v. Daly*, 243 F.3d at

701, 701 n.12 (noting that on a motion to dismiss, the court "need not decide whether, for Title

VII purposes, it is possible for the adverse actions complained of to be caused by *both* retaliation

and sex discrimination").

Contrary to Defendant's assertion, Plaintiff alleges that Entity Defendants participated in

the adverse employment actions she suffered.  (FAC ¶¶ 172-173, 175.)  For example, she alleges

that "Entity Defendants subjected Plaintiff to further harassment and mistreatment, denied her

access to shows on which she had previously appeared…, refused to market Plaintiff's show, failed to invite Ms. McHenry to key Fox News events, cut her out of Fox Nation programs, and denied Ms. McHenry of other professional opportunities." (*Id.* at ¶ 172.)  Namely, she alleges that she was stripped of the role of reporting on the MLB All Star Game on Fox News Channel (*Id.* at ¶ 93), has been effectively barred from appearing on *Watters' World* (*Id.*), was excluded from Fox Nation's 2019 summit (*Id.* at ¶ 96), was deprived of marketing (*Id.* at ¶ 97), was cut from Fox Nation's "Patriot Awards" (*Id.* at ¶ 113), and has effectively been barred from promotional opportunities and appearances on Fox News and Fox Nation (*Id.* at ¶¶ 98, 114, 117).

### 3.   Plaintiff Has Adequately Pled Claims for Discrimination and Retaliation Under the NYCHRL

#### a.   NYCHRL Gender Discrimination

"It shall be an unlawful discriminatory practice ... [f]or an employer or an employee ... because of the ... gender ... of any person, ... to discriminate against such person ... in terms, conditions or privileges of employment."   N.Y.C. Admin. Code § 8–107(1)(a).   "Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims."   *Clarke v. InterContinental Hotels Grp., PLC,* No. 12-cv-2671, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013).   "[T]he plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees" because of a protected trait.   *Mihalik,* 715 F.3d at 110 (quoting *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)) (internal quotation marks omitted).   Any unwanted conduct on the basis of a protected characteristic "imposes a different term or condition of employment," even if the harassing conduct does not rise to the level of being severe and pervasive.   *Johnson v. Strive E. Harlem Empl. Group*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (quoting *Williams v. New York City Hous.*

*Auth.,* 872 N.Y.S.2d at 38).   Even 'a single comment that objectifies women ... made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable.'"   *Mihalik*, 715 F.3d at 111 (internal quotations omitted).   An employer shall be liable for an employee's discriminatory conduct where "the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action" or where "the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."   N.Y.C. Admin. Code § 8-107(13)(b).

Here, Plaintiff alleges that Defendant Murdoch discriminated against her by engaging in "unwanted" conduct towards her on the basis of her gender – initially, the unwanted conduct consisted of inappropriate sexual innuendo and sexual advances towards her.   (FAC at ¶¶ 71-80.) Plaintiff alleges that she "did not consent to Mr. Murdoch's sexual messages and his sexual advances" and that his advances "were at all times unwanted…"   (*Id.* at ¶ 82.)   Plaintiff alleges that Defendant Murdoch's "unwanted" conduct towards her manifested itself in hostility and aggression after she resisted his advances and ultimately brought her boyfriend to New York for Fox tapings.   (*Id.* at ¶¶ 75-77, 81, 84.)   As explained above, Plaintiff alleges that she reported Defendant Murdoch's "inappropriate and sexual harassing text messages" to *Un-PC's* executive producer in January of 2019 (*Id.* at ¶ 83), and reported his "demeaning conduct" in February of 2019 (*Id.* at ¶ 84).   The FAC alleges sufficient factual content to allows the Court to draw the reasonable inference that Defendant Fox Corp. acquiesced in Defendant Murdoch's abusive gender-based misconduct, failed to take immediate and appropriate corrective action against it, and should have known of his continued discriminatory examples yet failed to prevent it.   For example, although complained about Defendant Murdoch's "demeaning conduct" in February of

15

2019, Defendant did not investigate his conduct, which only worsened; in April of 2019, Defendant Murdoch yelled and cursed at Plaintiff on set, in front of their show guest. (*Id.* at ¶ 86.) After two additional complaints by Plaintiff, Defendant Murdoch was promoted to his own show. (*Id.* at ¶ 89.) However, Defendant Fox Corp. failed to prevent Defendant Murdoch's continued misconduct towards Plaintiff: he public mocked her complaint (*Id.* at ¶¶ 91, 115) and circulated doctored photographs purporting to be of her cleavage (*Id.* at ¶¶ 106-107). Entity Defendants instructed Plaintiff to direct her complaints to her attorney. (*Id.* at ¶ 91.) Plaintiff has sufficiently alleged that Defendant Fox Corp. is liable for Defendant Murdoch's discriminatory conduct under the NYCHRL.

### b.   NYCHRL Retaliation

A plaintiff alleging a claim for retaliation under the NYCHRL must allege that (1) she took an action to oppose the defendant's discrimination, and (2) as a result of the action, the defendant engaged in conduct that was "reasonably likely to deter a person from engaging in such action." *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 112 (2d Cir. 2013). As the appellate division of the New York's Supreme Court explained:

> In assessing retaliation claims that involve neither ultimate actions nor materially adverse changes in terms and conditions of employment, it is important that the assessment be made with a keen sense of workplace realities, of the fact that the "chilling effect" of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct in light of those realities. Accordingly, the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable. On the contrary, no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, "reasonably likely to deter a person from engaging in protected activity."

*Williams v. New York City Hous. Auth.*, 61 A.D.3d at 71.

Here, Plaintiff alleges that Defendant Murdoch retaliated against her for rebuffing his sexual advances and for complaining about his sexual harassment, by "ignoring her, cursing at her and berating her on set."  (FAC at ¶ 162.)  She also alleges that he retaliated against her by doctoring a sexually explicit photograph of her and circulating it to Fox News employees, publicly mocking her sexual harassment complaint, and disclosing confidential and/or untruthful information about her complaint to other Fox News employees and supervisors.  (*Id.*)  The jury is "best suited" to evaluate whether this conduct was "reasonably likely to deter a person from engaging in protected activity."  *Williams v. New York City Hous. Auth.*, 61 A.D.3d at 71. Regardless, Defendant Fox Corp. is strictly liable for Defendant Murdoch's retaliatory conduct under the NYCHRL.  N.Y.C. Admin. Code § 8-107(13)(a).

Moreover, Defendant Fox Corp. is liable for its own conduct against Plaintiff which was reasonably likely to deter a person from complaining about discrimination and retaliation.  *Mihalik*, 715 F.3d at 112.  As explained more fully in Section III.D.2.b, above, Defendant Fox Corp. retaliated against Plaintiff for complaining by subjecting her to further harassment and mistreatment, denying her access to shows on which she had previously appeared, refusing to market her show, failing to invite her to key Fox News events, cutting her out of Fox Nation programs, and denying her other professional opportunities.  (FAC at ¶ 172.)

In sum, Plaintiff has plausibly stated claims for discrimination and retaliation against Defendant Fox Corp. under both the NYSHRL and the NYCHRL.

## E. MS. MCHENRY HAS PLAUSIBLY STATED A CLAIM FOR AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL AND NYCHRL

It is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so."  N.Y. Exec.

Law § 296(6); *see also* N.Y. City Admin. Code § 8–107(6).  Aiding and abetting claims under the NYSHRL and the NYCHRL are analyzed under the same standard, "as language of the two laws is virtually identical." *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (internal quotation marks omitted).  A defendant who actually participates in the conduct giving rise to a discrimination claim may be held liable for aiding and abetting the discrimination even if the defendant lacks the authority to either hire or fire the plaintiff.  *Xiang v. Eagle Enterprises, LLC*, 19-cv-1752, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).  Additionally, a defendant who "encouraged, condoned, or approved" the discrimination or retaliation at issue may be liable for aiding and abetting it.  *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 162–63, (E.D.N.Y. 2011) (citing *Feingold,* 366 F.3d at 157–59; *Raneri v. McCarey,* 712 F.Supp.2d 271, 282 (S.D.N.Y.2010) (internal citations omitted).

As explained below, the FAC adequately pleads claims for aiding and abetting against Defendant Fox Corp., and against each Individual Defendant.

1.  *The First Amended Complaint Plausibly Alleges that Defendant Fox Corp. Aided and Abetted Discrimination and Retaliation*

A corporation may be found liable for aiding and abetting any of the acts otherwise forbidden by the NYSHRL or NYCHRL.  N.Y. Exec. Law §§ 292, 296(6); N.Y.C. Admin. Code §§ 8-102, 8–107(6); *see also Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187-188 (2017) (holding that Section 296(6) of the NYSHRL extends liability to persons "and entities beyond joint employers").  Here, the FAC adequately alleges that Defendant Fox Corp. actively participated in the conduct giving rise to Plaintiff's discrimination and retaliation claims against Fox News under the NYSHRL and NYCHRL (*see* Sects. III.D.2. and III.D.3.).  Therefore, should the Court find that

Entity Defendants are not a single employer, the FAC states a claim that Defendant Fox Corp. is liable as an aider and abettor of Fox News' discriminatory and retaliatory conduct.

In addition, the FAC adequately alleges that Defendant Fox Corp. condoned and approved of Defendant Murdoch's discrimination and retaliation. The FAC alleges that Defendant Fox Corp. aided and abetted said discrimination and retaliation by: accusing her of "provoking" Defendant Murdoch's sexual text messages (*Id.* at ¶ 88), failing to take appropriate action to correct Plaintiff from discrimination and retaliation (FAC ¶ 134), retaining Defendant Murdoch despite his misconduct (*Id.* at ¶¶ 9, 134), rewarding his misconduct with his own show (*Id.* at ¶ 89), condoning Defendant Murdoch's harassing conduct (*Id.* at ¶ 135), and letting Fox News personalities publicly mock Plaintiff's complaints (*Id.* at ¶¶ 91, 115).

### 2. *The First Amended Complaint Plausibly Alleges that Individual Defendants Aided and Abetted Discrimination and Retaliation*

Plaintiff alleges that both Fox Corp. and Fox News engaged in discriminatory conduct as employers, based in part on the conduct of Individual Defendants Mekeel, Rauchet, and Finley. Where the plaintiff adequately pleads that an employer discriminated or retaliated against her, it follows that the plaintiff's claims against other individual defendants may proceed on the theory that such defendants aided and abetted discriminatory acts committed by the employer. *Dodd v. City U. of New York*, 17-cv-9932, 2018 WL 4284289, at *9 (S.D.N.Y. Sept. 7, 2018). An individual may be personally liable for aiding and abetting allegedly unlawful discrimination by an employer "where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL." *Xiang*, 2020 WL 248941, at *5 (internal quotations omitted). Therefore, if the Court finds that the FAC adequately pleads claims of discrimination and retaliation against

Fox Corp. and/or Fox News, Individual Defendants may be liable for aiding and abetting said discrimination and retaliation.

Plaintiff also alleges that Defendant Murdoch engaged in discriminatory and retaliatory conduct, and that Individual Defendants aided and abetted his conduct by failing to take adequate remedial measures.  Aider-and-abettor liability may also extend to supervisors "who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct." *Morgan v. NYS Atty. Gen.'s Office,* 11–cv–9389, 2013 WL 491525, at *13 (S.D.N.Y. Feb. 08, 2013); *see also Anderson v. Davis Polk & Wardwell LLP,* 850 F. Supp. 2d 392, 404 (S.D.N.Y 2012) (noting that "an employee may be held personally liable as an aider and abettor for failing to take remedial action in response to a complaint of sexual harassment") (citing *Patane v. Clark,* 508 F.3d 106, 115 n. 7 (2d Cir.2007)); *Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*, 12-cv-2947, 2013 WL 1193056, at *5-6 (E.D.N.Y. Mar. 22, 2013) (holding that allegations that supervisors failed to investigate or take remedial action in response to the plaintiff's complaints provided a sufficient basis for both a hostile work environment and aiding and abetting claims under NYCHRL); *Lewis v. Triborough Bridge and Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999) ("the law is clear that a supervisor need not make derogatory comments or unwelcome sexual advances to subject himself or herself to liability under the HRL….Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL §296(6).").

     a.     Defendant Finley

Defendant Finley argues that the FAC fails to state a claim against him because it does not allege that he "knew about, let alone actually participated in, any purported sexual harassment" or that he "shared a discriminatory or retaliatory animus with a principal actor."  (Defs.' Mot. at 10.)

However, the allegation that an individual "failed to investigate or take remedial action in response to plaintiff's complaints provides a sufficient basis for an aiding and abetting claim under NYCHRL." *Cid*, 2013 WL 1193056, at \*6.  Plaintiff alleges that she complained about discrimination and retaliation to Defendant Finley, but that he failed to adequately investigate her claims and prevent further misconduct.  (FAC at ¶¶ 87, 186.)

Moreover, accepting all factual allegations in the complaint as true and drawing all inferences in favor of the plaintiff, Finley's actions serve as a predicate for Entity Defendants' liability for discrimination and retaliation.  The FAC alleges that Plaintiff's agent emailed Finley on April 12, 2019 and reported "Ms. McHenry's intolerable and hostile work environment, as well as Ms. Rauchet's inappropriate reaction to Ms. McHenry's complaint."[1]  (*Id* at ¶ 87.)  Therefore, at a minimum, Finley was on notice of the hostile work environment and retaliation starting in April of 2019.  After this date, Defendant Murdoch and high-profile Fox News personality Greg Gutfeld publicly mocked Fox News' investigation into Plaintiff's discrimination complaint (*Id.* at ¶¶ 91, 115), and Murdoch circulated doctored photographs of Plaintiff's cleavage around Fox News (*Id.* at ¶¶ 106-107).  Also after this date, Fox's counsel also conducted a sham investigation into Plaintiff's complaint (*Id.* at ¶ 101), and has maintained its position that Plaintiff has not been sexually harassed or retaliated against, and "stuck with its policy of rewarding Mr. Murdoch with his own show and many Fox News Channel appearances, while shunning her" (*Id.* at ¶ 109).  The FAC alleges that Finley "oversees Fox Nation" (*Id.* at ¶ 11), from which it can be reasonably

---

[1] Defendants attach said email as Exhibit A to their Motion, improperly authenticated and improperly redacted in violation of this Court's Individual Rule 2 and ECF Rules and Instructions, Section 6.  Regardless, Defendant Finley's argument that the email "makes no mention of sexual harassment or any other conduct on the basis of sex or other protected characteristic" is contradicted by the text of the email itself, which refers not only to other "conversations" about Defendant Murdoch's conduct, but also to a "'hostile' environment," "Human Resources," and "abusive behavior," which can reasonably be inferred to constitute a lay complaint of hostile work environment and retaliation.  *See DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d. Cir. 2010) (rejecting the district court's interpretation of emails against the plaintiff as a matter of law).

inferred not only that he knew or should have known about these additional instances of discrimination, but also that he could have stopped them.

The FAC also alleges that Defendant Finley retaliated against Plaintiff "by not booking her on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances." (*Id.* at ¶ 186.)  Similarly, it can reasonably be inferred that Finley, who oversees Fox Nation, participated in the decision not to invite Plaintiff to the Fox Nation Summit and other events, to exclude her from broadcasts, to minimize Plaintiff's marketing on Fox Nation, and to shun her from interactions with any Fox News managers and executives.

b.     Defendant Mekeel

Defendant Mekeel argues that the FAC fails to state a claim against her because it does not allege that she "knew about the alleged harassment, let alone that she participated in it" or that she "shared alleged discriminatory or retaliatory animus of any principal actor."  (Defs.' Mot. at 18, 19.)  As explained above, however, the allegation that an individual "failed to investigate or take remedial action in response to plaintiff's complaints provides a sufficient basis for an aiding and abetting claim under NYCHRL."  *Cid*, 2013 WL 1193056, at *6.  Here, Plaintiff alleges that she complained about discrimination and retaliation to Defendant Mekeel, but that she failed to adequately investigate her claims and prevent further misconduct.  (FAC at ¶¶ 88, 186.)

Moreover, Plaintiff alleges that Mekeel participated in discriminatory and retaliatory conduct, and that her actions serve as a predicate for Entity Defendants' liability.  Mekeel responded to Plaintiff with regard to her sexual harassment and retaliation complaint against Murdoch.  (*Id.* at ¶ 88.)  Plaintiff alleges that Mekeel discriminatorily accused her of "provoking" Murdoch to sexually harass her – "a common albeit sexist response to complaints of sexual harassment made by women against men."  (FAC ¶ 186.)  The FAC therefore sufficiently alleges

that Mekeel shares the sexist intent or purpose of both the Entity Defendants ("Fox stands behind its on-air talent despite conduct and comments that can only be described as sexist, misogynistic, and discriminatory") (*id.* at ¶ 58) and Defendant Murdoch (whose sexually-based text messages can reasonably be inferred to constitute sexist, misogynistic, and objectifying conduct toward Plaintiff) (*id.* at ¶¶ 71-80).  The FAC also alleges that Defendant Mekeel retaliated against Plaintiff "by not booking her on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances."  (*Id.* at ¶ 186.)  It can reasonably be inferred that Defendant Mekeel, who works in HR, participated in the decision minimize Plaintiff's appearances at Fox Corp. and Fox News events, perhaps in a misguided attempt to minimize their liability.

c.      Defendant Rauchet

Defendant Rauchet argues that the FAC fails to state a claim against her because it does not adequately state that "Plaintiff made a protected harassment complaint to Rauchet," that "Rauchet knew of the harassment while it was ongoing," that "Rauchet participated in retaliation against her," or that "Rauchet shared a discriminatory or retaliatory animus with other defendants." (Defs.' Mot. at 20, 21.)  Again, the allegation that an individual "failed to investigate or take remedial action in response to plaintiff's complaints provides a sufficient basis for an aiding and abetting claim under NYCHRL."  *Cid*, 2013 WL 1193056, at *6.  Here, Plaintiff alleges that she complained about discrimination and retaliation to Defendant Rauchet, but that Defendant Rauchet failed to adequately investigate her claims and prevent further misconduct.  (FAC at ¶¶ 83-84, 86, 186.)

Moreover, the FAC adequately alleges that Plaintiff made a protected harassment complaint to Defendant Rauchet, that Defendant Rauchet participated in discrimination and

retaliation against her, and that Defendant Rauchet shared a discriminatory or retaliatory animus against Plaintiff.  For example, the FAC alleges that Plaintiff complained to Rauchet, the executive producer of *Un-PC* (FAC ¶ 83), not only about Defendant Murdoch's sexual harassment, but also about his retaliatory abuse (*Id.* at ¶¶ 83-84, 86).  Defendant Rauchet responded by instructing Plaintiff not to complain, by telling her that she was "replaceable," and by physically walking out on her.  (*Id.* at ¶ 86.)  Plaintiff was never booked on *Watters' World* again, despite prior regular appearances and communication from bookers that they wanted her to appear (*Id.* at ¶ 93); Plaintiff was also cut from Fox Nation's "Patriot Awards" broadcast, despite having filmed a segment for it (*Id.* at ¶ 113). Given that Rauchet was a top producer of both *Watters' World* and "Patriot Awards" (*Id.* at ¶¶ 93, 113) it can be reasonably inferred that Rauchet participated in retaliation against Plaintiff for complaining by barring her from her Fox News shows, in fact, the FAC specifically alleges that it was Defendant Rauchet who cut Plaintiff out of the "Patriot Awards." (*Id.* at ¶ 113).  The FAC alleges that Rauchet told third parties to keep their distance from Plaintiff because she was "drama" (*Id.* at ¶ 99) and that a host had been hired to eventually replace Plaintiff (*Id.* at 118).   The FAC also alleges that Defendant Rauchet retaliated against Plaintiff "by not booking her on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances."  (*Id.* at ¶ 186.)  It can reasonably be inferred that Rauchet, who is a top producer at Fox News, participated in the decision minimize Plaintiff's appearances on Fox News and Fox Nation broadcasts, especially those broadcasts for which she was the executive producer.

///

///

///

**IV.**    <u>**CONCLUSION**</u>

       For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.


DATED: May 4, 2020                Respectfully submitted,

                                       **THE BLOOM FIRM**


                                       By: <u>/s/ Arick Fudali</u>
                                       Lisa Bloom
                                       Arick Fudali
                                       Anna Levine-Gronningsater
                                       Sarah Bloom
                                       Attorneys for Plaintiff Brittany McHenry