UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRITTANY MCHENRY,

                                    Plaintiff,

              -v-

FOX NEWS NETWORK, LLC; FOX CORPORATION;
GEORGE MURDOCH (A/K/A "TYRUS"); JENNIFER
RAUCHET; JOHN FINLEY; and MONICA MEKEEL,

                                    Defendants.

---

19 Civ. 11294 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case involves claims of sexual harassment brought by a television personality. Plaintiff Brittany McHenry ("McHenry") alleges that, while employed as such on a Fox News Network, LLC ("Fox News") show, she was subjected to sexual harassment by her co-host, George Murdoch ("Murdoch"). She further alleges that as a result of reporting this harassment, she was subjected to retaliation by Fox News, its parent corporation, Fox Corporation ("Fox Corp."), and Murdoch. McHenry brings claims of sexual harassment, gender discrimination, and retaliation under the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL") and the New York City Human Rights Law, New York City Administrative Code § 8-502(a) *et seq.* ("NYCHRL"). McHenry further alleges that three officials at Fox News Channel—John Finley ("Finley"), a Vice President; Monika Mekeel ("Mekeel"), a Human Resources representative; and Jennifer Rauchet ("Rauchet"), an executive producer—aided and abetted the sexual harassment, discrimination, and retaliation.

Fox News has not moved to dismiss the claims against it. But the Court has received two such motions: one from Fox Corp., Finley, Mekeel, and Rauchet; and the other from Murdoch.

For the following reasons, the Court grants the motion to dismiss the claims against Fox Corp.,

Finley, and Mekeel; grants in part and denies in part the motion to dismiss the claims against

Rauchet; and denies in its entirety Murdoch's motion to dismiss.

## I.     Background

### A.     Factual Background[1]

McHenry is an on-air reporter who, in August 2017, made her first appearance on a Fox

News program, *Tucker Carlson Tonight*.  Am. Compl. ¶ 62.  McHenry later made regular

appearances on other Fox News programs, including *Fox and Friends* and *Watters' World*.  *Id.*

In March 2018, WTTG, a Fox News affiliate, hired McHenry to co-host *Like It or Not*, a news

show focused on current events.  *Id.* ¶ 63.

On or about July 18, 2018, Fox News hired McHenry to co-host *Un-PC*, a political

entertainment talk show, with Murdoch, a former professional wrestler who currently hosts his

own show on Fox Nation, *Nuff Said*.  *Id.* ¶¶ 9, 64.  The Amended Complaint alleges, on

---

[1] This factual account draws primarily from the Amended Complaint, Dkt. 39 ("Am. Compl."),
attached exhibits, and documents, including emails, that have been incorporated by reference in
the Amended Complaint.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)
("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a
district court may consider the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference in the complaint.").

Fox Corp. attached the email referenced in the Amended Complaint to the Declaration of
Matthew Lampe, Dkt. 45 ("Lampe Decl."), Ex. A ("April 12, 2019 Email").  McHenry contends
that this copy of the email is improperly authenticated and redacted.  *See* Dkt. 48 ("Opp'n to Fox
Corp. Mem.") at 21 n.1.  However, McHenry does not contest either that Exhibit A to the Lampe
Declaration is a true and correct copy of the email, or that the email was incorporated by
reference in the Amended Complaint.  Accordingly, the Court will consider the April 12, 2019
Email in deciding the motions to dismiss.

For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all
well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v.
Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

information and belief, that Fox Corp., as Fox News's parent, made the ultimate decision to hire McHenry. *Id.* ¶ 64. The Amended Complaint alleges that Fox Corp. is the parent company and sole member of Fox News, which operates Fox News Channel and Fox Nation. *Id.* ¶¶ 6–7. The Amended Complaint further alleges that Fox Corp. and Fox News are a "single employer" of McHenry because "all significant decisions made by Fox News[] need to be approved by Fox Corp[.]" *Id.* ¶¶ 7–8. The Amended Complaint further alleges that: (1) Fox News CEO Suzanne Scott reports to Fox Corp. CEO and Executive Chairman Lachlan Murdoch; (2) Fox Corp. "makes hiring and firing decision for Fox News"; (3) Fox Corp.'s Human Resources "investigates complaints made by Fox News" employees; (4) Fox Corp. "establishes the operating and management practices for employees at Fox News"; (5) certain Fox Corp. employees "performed job duties for both Fox Corp[.] and Fox News"; and (6) Fox Corp. "controls the discipline, pay, insurance, records, and supervision of Fox News" employees. *Id.* ¶ 7.

Between September 2018 and April 2019, McHenry hosted *Un-PC* with Murdoch. *Id.* ¶ 9. She first met Murdoch in August 2018 and began having weekly rehearsals with him in September 2018. *Id.* ¶ 65. Soon after, McHenry became aware of Murdoch's "volatile, and at times disturbing relationships with others, especially with women." *Id.* ¶ 66. Murdoch told McHenry that his girlfriend was jealous of McHenry and had sent her (and subsequently deleted) a threatening message on Instagram. *Id.* ¶ 67. Murdoch also told McHenry that the mother of one of his children had accused him of abusing drugs and threatening her and her children. *Id.* ¶ 68. This made McHenry feel that she "need[ed] to be careful" around Murdoch. *Id.*

At an unspecified time, Murdoch began "making sexual advances to Ms. McHenry and making sexually harassing comments to her," and "sending her inappropriate text messages." *Id.*

¶ 71.  At no time did McHenry consent to receiving sexual messages or to Murdoch's sexual advances.  *Id.* ¶ 82.  On October 31, 2018, Murdoch texted McHenry, "I love pony tails and braids you look amazing and it's a real turn on not that you care but I love it[.]"  *Id.* ¶ 72.  On November 2, 2018, Murdoch texted McHenry:  "I love your legs"; "Fuck them your beautiful I love that picture"; "Is it creepy how I look at you ???"; "FYI you'll need those legs to escape from me in Montana"; and "I please especially on your knees hotness[.]"  *Id.* ¶ 73.  On November 5, 2018, Murdoch texted McHenry: "I'll show you what it mean to be bad Brittany Mc Henry"; and "Dick pic coming in 5 sec!!!!"  *Id.* ¶ 74.

McHenry maintained a "friendly relationship" with Murdoch and "at one point thought that they were becoming good friends."  *Id.* ¶ 75.  McHenry did not want to upset Murdoch "out of fear of his volatile tendencies" and so as not to impact the show.  *Id.*  Accordingly, McHenry "politely" replied to Murdoch's messages with "friendly but non-sexual responses."  *Id.*  McHenry never sent Murdoch any sexual messages.  *Id.*

On or about November 6, 2018, following a taping of *Un-PC*, McHenry and Murdoch had dinner together in Times Square, during which Murdoch "drank alcohol excessively."  *Id.* ¶ 76.  On the way back to the hotel, Murdoch grabbed McHenry's hand and "held it in an aggressive and overtly sexualized manner."  *Id.*  McHenry did not want to upset Murdoch but was able to take her hand away within a minute.  *Id.*  When McHenry and Murdoch arrived at the hotel, she left Murdoch in the lobby with the doorman and "rushed" back to her room.  *Id.*

After this incident, Murdoch "continued to sexually harass Ms. McHenry by making sexually inappropriate comments to her in person and via text message."  *Id.* ¶ 77.  On November 17, 2018, Murdoch texted McHenry:  "The picture looks so good I would knock the picture up . . . . crazy sexy love your legs[.]"  *Id.* ¶ 78.  On November 18, 2018, Murdoch texted:

"I love the fact your always working if we ever had sex I feel like after an orgazzum you say speaking of feeling good did see the story on the puppy rescue we should do a segment on it hand me my phone[.]"  *Id.* ¶ 79.  On December 10, 2018, Murdoch texted McHenry:  "Keep being negative and I'll send you another dick pic[.]"  *Id.* ¶ 80.  On December 31, 2018, while McHenry and Murdoch were in New York for New Year's Eve tapings, Murdoch "became hostile and aggressive" upon learning that McHenry had brought her boyfriend to New York.  *Id.* ¶ 81.

After learning that McHenry had a boyfriend, Murdoch "further harassed and retaliated against her, and created an abusive and hostile work environment for her on set" and refused to talk to McHenry unless it was during a taping of the show.  *Id.* ¶ 83.  In January 2019, McHenry reported to Rauchet, *Un-PC*'s executive producer, that Murdoch had sent McHenry "inappropriate and sexual harassing text messages."  *Id.*  Rauchet did not report this complaint to Human Resources or otherwise investigate.  *Id.*  On February 22, 2019, Murdoch "lashed out" at McHenry on the air, telling her she had "an ignorant point of view," that she had "no integrity," and that "only an idiot would say that," which prompted McHenry to call Rauchet to make a second "sexual harassment" complaint "about Mr. Murdoch's demeaning conduct."  *Id.* ¶ 84. Rauchet did not report this complaint to Human Resources or otherwise investigate but acknowledged that Murdoch was "difficult" and had previously sent Rauchet a "hostile" email about *Un-PC*.  *Id.*

Between February 2019 and April 2019, Murdoch refused to speak to McHenry except on camera, and "continued to be rude to her."  *Id.* ¶ 85.  McHenry occasionally invited Murdoch to lunch when things were civil between them, but the relationship did not improve.  *Id.*

On or around April 12, 2019, Murdoch yelled at McHenry about the placement of a hockey banner on set and "cursed at her." *Id.* ¶ 86. McHenry then made a third complaint to Rauchet about Murdoch's "sexual harassment and retaliatory abuse." *Id.* Rauchet told McHenry that she was "replaceable" and that Fox News "never wanted her," before walking out of the room. *Id.* On April 12, 2019, McHenry's agent emailed Finley, a Vice President at Fox News Channel, and reported McHenry's "intolerable and hostile work environment" and Rauchet's "inappropriate reaction" to McHenry's complaint. *Id.* ¶¶ 64, 87; April 12, 2019 Email.

On or around April 17, 2019, Mekeel, a Fox News Human Resources representative, reached out to McHenry. Am. Compl. ¶ 88. In her position as HR representative, Mekeel "performed job duties for both Fox Corp[.] and Fox News." *Id.* ¶ 7. After McHenry sent some screenshots of the text messages from Murdoch, Mekeel "requested every text message ever exchanged" between McHenry and Murdoch and "essentially asked Ms. McHenry what she had done to provoke" Murdoch. *Id.* ¶ 88.

At an unspecified time, Fox News informed McHenry that *Un-PC* would continue with her and a new co-host. *Id.* ¶ 89. Murdoch was not suspended and was instead given his own show, an opportunity that, McHenry contends, is "more prestigious" than co-hosting. *Id.* Murdoch also continued to make appearances on Fox News Channel shows, such as *The Daily Briefing with Dana Perino* and *The Greg Gutfeld Show*; such appearances on Fox News Channel, McHenry states, are "career enhancing" for Fox Nation talent. *Id.*

At an unspecified time, Fox News closed McHenry's complaint, having concluded that Murdoch's conduct did not constitute sexual harassment because Murdoch had no "clear intent to have sex with her." *Id.* ¶ 90. Fox News did not take steps to prevent Murdoch and another Fox News employee, Greg Gutfeld, from "mock[ing]" the investigation on social media or from

contacting the co-founder of *The Federalist*, to which McHenry occasionally contributed articles, to "criticize" him for supporting McHenry. *Id.* ¶ 91. Fox News did not respond to McHenry's additional complaints and advised her to report them to her attorney. *Id.*

The Amended Complaint alleges that, as a result of her complaints, McHenry experienced various forms of retaliation. Since making her sexual harassment complaints, McHenry received fewer professional opportunities. *Id.* ¶ 93. Although before her complaint McHenry was a regular on Fox News Channel show *Watters' World*, for which Rauchet serves as executive producer, she has since not been booked "despite communication from bookers that they wanted her to appear" on the show. *Id.* Murdoch, in contrast, has continued to make appearances on Fox News Channel programs. *Id.* McHenry has been "frozen out" by Fox News management, whose members no longer check in or stop by to watch her show tape. *Id.* ¶ 95. McHenry was the only Fox Nation host not invited to the May 2019 Fox Nation summit. *Id.* ¶ 96. Murdoch's new show *Nuff Said* received significantly more marketing and promotion than *Un-PC*, whereas McHenry has made fewer appearances on Fox News Channel shows than any other Fox Nation host, including her new co-host on *Un-PC* and Murdoch. *Id.* ¶¶ 97–98. In November 2019, McHenry heard Rauchet tell a Fox News guest to "keep her distance" from McHenry because McHenry was "drama" for suing the network, although McHenry's suit had not yet been filed. *Id.* ¶ 99.

After repeated requests from McHenry, Fox News hired law firm DLA Piper to both represent Fox News in "negotiat[ing] McHenry's departure" and to conduct an independent investigation. *Id.* ¶¶ 100–101. DLA Piper did not find evidence of sexual harassment. *Id.* ¶ 101. After McHenry requested an "impartial investigator," Fox News hired a different investigator, unidentified in the Amended Complaint, to investigate her claims. *Id.* ¶ 102. In a September 12,

2019 interview with McHenry, the investigators asked McHenry why she did not tell Murdoch to "tone it down" and asked: "I mean, come on, you didn't know you were leading him on?"  *Id.* ¶ 103.  The investigators did not ask McHenry about her retaliation claims.  *Id.*

On October 18, 2019, the investigators issued a memorandum stating that they had not found sexual harassment or retaliation.  *Id.* ¶ 104.  On October 22, 2019, counsel for Fox News showed McHenry text messages purportedly between McHenry and Murdoch, which Fox News claims were acquired during the investigation and were "critical" to the investigators' finding.  *Id.* ¶ 105.  The text messages included two "fraudulent" and "doctored" sexualized photos seemingly of McHenry, which McHenry had purportedly sent to Murdoch.  *Id.* ¶ 106.  The photos "purported to be from Ms. McHenry to Mr. Murdoch with her cleavage and nearly bare breast shown."  *Id.*  Murdoch had been "allegedly been circulating these fraudulent text messages to others at Fox News."  *Id.* ¶ 107.  McHenry, in response, offered to have her cell phone examined by a forensic expert to prove that she had not sent these photos, provided Murdoch did the same.  *Id.* ¶ 108.  Murdoch refused to do so.  *Id.*

The Amended Complaint alleges that, since the filing of the initial Complaint, McHenry continues to experience retaliation from Fox News and Murdoch.  In relevant part, after McHenry filed the Complaint on December 11, 2019, Murdoch "posted a photo on Twitter of a person laughing" in an attempt to mock her lawsuit and, "on information and belief," was not disciplined.  *Id.* ¶ 115.  At an unspecified time, McHenry became aware that Rauchet had told a Fox News contributor that Fox Nation host Kacie McDonnell would be replacing McHenry.  *Id.* ¶ 118.  Although she is still McHenry's executive producer, Rauchet refuses to speak to McHenry, "even about work-related issues."  *Id.* ¶ 121.

### B.    Procedural History

On December 11, 2019, McHenry filed the initial Complaint against Fox News, Fox

Entertainment Group; News Corporation, Fox Corp., Murdoch, Finley, Mekeel, and Rauchet.

Dkt. 6 ("Compl.").  On December 24, 2019, McHenry voluntarily dismissed Fox Entertainment

Group and News Corporation.  Dkt. 10.  On March 9, 2020, Murdoch filed a motion to dismiss

the claims against him for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkts. 31–33.  The same

day, Fox Corp., Finley, Mekeel, and Rauchet filed a motion to dismiss for failure to state a claim

under Rule 12(b)(6).  Dkts. 34–35.  On March 11, 2020, Fox News answered the Complaint.

Dkt. 36.  The same day, the Court ordered McHenry to either amend her Complaint or oppose

the motions to dismiss by March 30, 2020.  Dkt. 37.

On March 30, 2020, McHenry filed the Amended Complaint.  Am. Compl.  On April 20,

2020, Murdoch filed a new motion to dismiss under Rules 12(b)(1) and 12(b)(6).  Dkts. 40

(notice of motion), 41 ("Murdoch Mem."), 42 ("Lieberman Decl.").  The same day, Fox Corp.,

Finley, Mekeel, and Rauchet filed a new motion to dismiss under Rule 12(b)(6).  Dkts. 43 (notice

of motion), 44 ("Fox Corp. Mem."); Lampe Decl.  Fox News filed an Answer to the Amended

Complaint.  Dkt. 46. ("Fox News Answer").  On May 4, 2020, McHenry filed oppositions to

both motions to dismiss.  Dkt. 47 ("Opp'n to Murdoch Mem."); Opp'n to Fox Corp. Mem.  On

May 11, 2020, Murdoch and Fox Corp., Finley, Mekeel, and Rauchet filed replies.  Dkts. 49

("Murdoch Reply"), 50 ("Fox Corp. Reply").

On September 10, 2020, the Court held an initial conference and stayed discovery as to

Fox Corp., Finley, Mekeel, and Rauchet pending resolution of the motions to dismiss and

ordered Murdoch to submit a letter stating whether, in light of McHenry's dismissal of her

complaint with the New York State Division of Human Rights ("NYSDHR"),[2] he intended to pursue his motion to dismiss based on Rule 12(b)(1).  Dkt. 63.  On September 14, 2020, Murdoch submitted a letter withdrawing the portion of his motion made under Rule 12(b)(1). Dkt. 64.  On September 25, 2020, the Court heard argument on the motions to dismiss.  Dkt. 74 ("Arg. Tr.").

## II.    Discussion

### A.    Applicable Legal Principles

#### 1.    Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.  That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[2] On October 29, 2019, McHenry filed a complaint with the NYSHDR, alleging sexual harassment, discrimination, and retaliation.  Am. Compl. ¶ 110.  On December 6, 2019, McHenry asked to withdraw that complaint. *Id.* ¶ 111.  On February 13, 2020, the NYSDHR notified McHenry that, honoring her request, it would dismiss the complaint. *Id.* ¶ 112.

### 2.    Sexual Harassment and Gender Discrimination[3]

#### a.    NYSHRL

Sexual harassment claims brought under a hostile work environment theory under the NYSHRL are judged by the same standard as their federal counterparts in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013). "To establish a hostile work environment . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The hostile work environment test has both objective and subjective elements. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22). "In determining whether a plaintiff suffered a hostile work environment," the Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (citing *Littlejohn*, 795 F.3d at 321). "As a general rule, incidents must be more than 'episodic; they must be sufficiently

---

[3] Although the Amended Complaint alleges claims of both sexual harassment and gender discrimination, it does not plead facts as to gender discrimination other than by means of sexual harassment. Nor does McHenry treat them separately in her opposition to Murdoch's motion to dismiss. *See generally* Opp'n to Murdoch Mem. Accordingly, the Court treats the harassment and discrimination claims as coextensive.

continuous and concerted in order to be deemed pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

The Second Circuit has "cautioned against setting the bar too high" for hostile work environment claims. *Id.*  To survive a motion to dismiss, a plaintiff must allege facts showing "she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (alterations in original) (quoting *Terry*, 336 F.3d at 148).

     *b.*    *NYCHRL*

The NYCHRL's standards for liability for sexual harassment are more permissive than those of the NYSHRL[4] and Title VII.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Unlike Title VII or the NYSHRL, the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the conduct was severe and pervasive, requiring only that the plaintiff demonstrate she was subjected to "unwanted gender-based conduct." *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dep't 2009)); *see Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16 Civ. 4779, 2017 WL 2345658, at *7 (E.D.N.Y. May 30, 2017) (at the motion to dismiss stage, a plaintiff "need only 'proffer evidence of unwanted gender-based conduct'") (quoting *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015)).[5]  The plaintiff "need only demonstrate 'by a

---

[4] With this caveat: As discussed *infra*, in August 2019, the NYSHRL was amended to broaden its liability standards governing conduct after its effective date.  *See* Section II.A.5.  The NYSHRL standards above, applied in this decision, govern conduct pre-dating the amendment.

[5] Under the NYCHRL, "there are not separate standards for 'discrimination' and 'harassment' claims; rather, 'there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender.'"  *Clarke v.*

preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 61 A.D.3d at 76).  However, "district courts must be mindful that the NYCHRL is not a general civility code." *Id.* (quoting *Williams*, 61 A.D.3d at 76).

### 3.   Retaliation

#### a.   NYSHRL

The NYSHRL, like Title VII, makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).

The same standards govern retaliation claims under Title VII and the NYSHRL.  Such claims are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  To demonstrate a *prima facie* case of retaliation, a plaintiff must establish: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  The plaintiff's burden of proof at the *prima facie* stage is "*de minimis*." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

---

*InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013) (quoting *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012)).  As with McHenry's claims under the NYSHRL, the Court treats McHenry's sexual harassment and gender discrimination claims under the NYCHRL as coextensive.

As with discrimination claims, at the motion to dismiss stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of [an NYSHRL] litigation."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316).[6]  For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice."  *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

> b.    *NYCHRL*

Retaliation claims under the NYCHRL are subject to a broader standard than under the NYSHRL and Title VII.  *See Dodd v. City Univ. of N.Y.*, --- F. Supp. 3d ---, 2020 WL 5750715, at *37 (S.D.N.Y. Sept. 25, 2020).  The NYCHRL provides:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter; (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8–115 of this chapter.  The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the

---

[6] To survive a motion to dismiss in the employment discrimination context, a complaint need not "contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework."  *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Nevertheless, the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

N.Y.C. Admin. Code § 8-107(7).  The NYCHRL thus defines the activities protected against retaliation more broadly than the NYSHRL.  Further, "[r]ather than requiring a plaintiff to show an adverse employment action, [the NYCHRL] only requires [her] to show that something happened that was reasonably likely to deter a person from engaging in protected activity." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (alterations in original) (quoting *Malena v. Victoria's Secret Direct*, *LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)).  "Otherwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL."  *Malena*, 886 F. Supp. 2d at 362 (internal quotation and citation omitted).  To allege a *prima facie* case for retaliation, "a plaintiff-employee must [plead] that (1) she engaged in protected activity; (2) the [defendant] was aware of this activity; (3) the [defendant] took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action."  *Id.*

### 4.    Aiding and Abetting

Both the NYSHRL and the NYCHRL prohibit "aid[ing], abet[ting], incit[ing], compel or coerce the doing" of any unlawful acts of discrimination under either title, including sexual harassment and retaliation.  N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6).  The same standard governs aiding and abetting claims under the NYSHRL and NYCHRL "because the language of the two laws is virtually identical."  *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation and citation omitted).  The aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff.  *See* N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6).  "[A] co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL [or

NYCHRL] even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158 (internal quotation and citation omitted).

To state a claim for aiding and abetting unlawful harassment, discrimination, or retaliation, a plaintiff must instead plead that the defendant "actually participate[d]" in such unlawful conduct by the employer.[7] *Farmer v. Shake Shack Enters., LLC*, No. 19 Civ. 9425 (PAE), 2020 WL 4194860, at *16 (S.D.N.Y. July 21, 2020) (internal citations and quotations omitted). Further, aiding and abetting "liability requires that the aider and abettor share the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *8 (S.D.N.Y. May 23, 2011); *see also Dodd*, 2020 WL 5750715, at *36. "A supervisor's 'failure to take adequate remedial measures' in response to a complaint of discrimination" can, with proper factual allegations, constitute actual participation. *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014) (quoting *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999)).

### 5.   August 2019 Amendments to the NYSHRL

In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed."  N.Y. Exec. Law § 300.  The amendment took effect on the signing date, August 12, 2019, although other parts of

---

[7] A plaintiff claiming aiding and abetting must, however, adequately allege that the employer engaged in discrimination or retaliation under the standards of the NYSHRL and NYCHRL.  *See Murphy v. ERA United Realty*, 251 A.D. 2d 469, 472 (2d Dep't 1998).  Here, Fox News, McHenry's direct employer, does not dispute the adequacy of the pleadings of the sexual harassment, gender discrimination, and retaliation claims against it.  The Court treats this predicate as well pled.

the omnibus bill containing it took effect on October 11, 2019.  *See* S. 6577, 242d Leg. § 16

(N.Y. 2019).

McHenry depicts the amendment as broadly applicable to her claims under the NYSHRL.

But the amendment has only a limited impact on her case, for two reasons.

First, the amendment does not have retroactive effect.  The omnibus bill does not contain

language indicating that the 2019 amendments were intended to apply retroactively, *see* Arg. Tr.

at 77–78, and "[i]t is a fundamental canon of statutory construction that retroactive operation is

not favored by courts and statutes will not be given such construction unless the language

expressly or by necessary implication requires it," *Majewski v. Broadalbin-Perth Cent. Sch.*

*Dist.*, 91 N.Y.2d 577, 584 (1998).  Accordingly, courts to date have held that the 2019 NYSHRL

amendments are not retroactive.  *See, e.g.*, *Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479

(KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (holding that omnibus bill's

effective date is October 11, 2019).

Second, McHenry's Amended Complaint alleges only discrete actions after the effective

date of the amendment.  These are by Rauchet and Murdoch only.  *See* Am. Compl. ¶ 99 (in

November 2019, Rauchet told a Fox News guest to stay away from McHenry because she was

"drama" for suing the network); *id*. ¶ 106 (in October 2019, McHenry discovered that Murdoch

had, at an unspecified time, circulated doctored messages containing photos purporting to be of

her).

There is no occasion at this stage to consider the legal consequence, if any, of the fact

that Rauchet's and Murdoch's conduct, as alleged, straddled the effective date of the amendment.

That is because, for the reasons that follow, the Court finds McHenry's claims against those two

defendants sounding in retaliation to state a claim under the pre-amendment standard.  These are

17

the retaliation claims against Murdoch and the aiding-and-abetting-retaliation claims against

Murdoch and Rauchet.  The remaining claims presently at issue are all based exclusively on

conduct predating the amendment, and none state a claim.  These are the claims against Fox

Corp., Finley, and Mekeel, and the harassment claims against Rauchet.

The Court accordingly leaves for another day the issue of how the liberalized standards

that the amendment put in place may bear on McHenry's surviving claims.  The Court will

consider that question if it is implicated by summary judgment and/or pretrial motions.

**B.     Application to Each Defendant**

**1.     Claims Against Murdoch**

The Amended Complaint brings claims against Murdoch for gender discrimination and

harassment, under the NYCHRL; aiding and abetting sexual harassment, gender discrimination,

and retaliation, under both the NYSHRL and the NYCHRL; retaliation, under the NYCHRL;

aiding and abetting retaliation, under the NYCHRL; and intentional infliction of emotional

distress.  Murdoch moves to dismiss all such claims.[8]

*a.     Direct Claims Under the NYCHRL*

i.     Sexual Harassment and Gender Discrimination

The Amended Complaint adequately pleads claims against Murdoch for sexual

harassment and gender discrimination under the NYCHRL.  It alleges that on multiple occasions

Murdoch sent McHenry sexually explicit, unwanted text messages.  Am. Compl. ¶¶ 71–80.  In

two, Murdoch threatened to send McHenry photos of his genitalia.  *See id.* ¶¶ 74 ("Dick pic

coming in 5 sec!!!"), 80 ("Keep being negative and I'll send you another dick pic").  Attempting

---

[8] Murdoch initially argued that the claims against him should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction as a result of McHenry's pending administrative action before the NYSDHR.  *See* Murdoch Mem. at 4–8.  After McHenry withdrew that complaint, Murdoch dropped that portion of his motion to dismiss.  Dkt. 64.

to minimize such conduct, Murdoch argues that these text messages do not support the inference that McHenry was harassed because of her gender.  Murdoch Mem. at 11.  That is wrong.  One text message contains an implicit reference to gender:  "The picture looks so good I would knock the picture up . . . . crazy sexy love your legs[.]"  Am. Compl. ¶ 78.  And the Amended Complaint further alleges that Murdoch doctored photos to make it appear that McHenry had sent him an image of herself with "her cleavage and nearly bare breast shown."  *Id.* ¶ 106. Hostile work environment claims similarly alleging a defendant's dissemination of sexually explicit pictures of a co-worker plaintiff have been held to meet the pleadings standards not only of the NYCHRL, but of the more demanding Title VII.  *See, e.g.*, *Gallagher*, 2017 WL 2345658, at *8; *see also id.* at *7 ("displays of obscene photographs and sexually offensive remarks can constitute a gender-based hostile work environment" under Title VII).  And in *Ruiz v. City of New York*, No. 14 Civ. 5231 (VEC), 2015 WL 5146629 (S.D.N.Y. Sept. 2, 2015), the plaintiffs, a romantically involved man and woman, were sent—as were other employees—a photo with the female plaintiff's face "photoshopped" onto a naked women's body.  *Id.* at *9.  The district court held that allegations of this conduct (and the use of sexually explicit graffiti using plaintiffs' names) stated a hostile work environment claim under the Title VII and NYSHRL.  *Id.* Similarly, here, the allegations that Murdoch sent McHenry doctored messages with an explicit photo purporting to be of her and numerous sexually explicit text messages state a claim under the NYCHRL.

Murdoch argues that these allegations fall short of alleging harassment because McHenry does not allege any actual "sexual advances" or that he was "propositioning Ms. McHenry or demonstrating a romantic interest in her."  Murdoch Mem. at 12.  That characterization of the factual allegations against Murdoch is incorrect.  His communications, as pled, are readily

construed to reflect sexual advances and propositions, albeit unusually crude and clumsy ones, towards her.  In any event, Murdoch's legal premise is wrong, as the NYCHRL does not require that the defendant have had a romantic interest in the plaintiff, but only that he subjected her to "unwanted gender-based conduct."  *Erasmus*, 2015 WL 7736554, at *7; *see Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 410–11 (S.D.N.Y. 1996) ("[S]exual harassment is not limited to unwanted physical touching; it can also consist of the display of obscene visual representations or the communication of sexually offensive remarks.").

Murdoch next argues that the Amended Complaint does not state a claim because it does not identify a similarly situated male employee who received "more favorable treatment *from Mr. Murdoch* than Ms. McHenry."  Murdoch Mem. at 11 (emphasis in original).  That argument is also easily dispatched.  The Amended Complaint alleges that, "[u]pon information and belief," Mr. Murdoch did not make sexual advances on male employees, or threaten to send them "dick pics."  Am. Compl. ¶ 146.[9]  Murdoch will be at liberty to defend against these claims at summary judgment and/or trial by demonstrating, if true, that he sent similar sexualized text messages and made similar sexual advances to his male colleagues.  But neither the Amended Complaint nor the materials cognizable on Murdoch's motion to dismiss so establish.

Finally, Murdoch argues that his advances and sexualized communications to McHenry were not "unwanted."  Murdoch Mem. at 13; Murdoch Reply at 4.  In support, Murdoch states that McHenry "repeatedly instigated flirtatious conversations" with him, Murdoch Mem. at 13, and that one can "logically infer" from his messages that he was "responding to pictures or

---

[9] *Twombly* permits a plaintiff to plead facts on information and belief "where the facts are peculiarly within the possession and control of the defendant."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Such is the case as to Murdoch's communications, *e.g.*, via text message, to his male colleagues.

messages from McHenry," Murdoch Reply at 4 (citing *Eaves v. Design for Fin., Inc.*, 785 F. Supp. 2d 229, 252 (S.D.N.Y. 2011)).  But the Amended Complaint does not allege that McHenry invited Murdoch's communications, whether by verbal or written flirtation or by sending him provocative photographs of herself.  And the text messages that the Amended Complaint cites, although not purporting to capture the entirety of the communications between the two, do not affirmatively support the inference that McHenry cultivated Murdoch's text messages to her, including those about his genitalia and sexual desires.  On the contrary, the Amended Complaint pleads that, at "all times," McHenry did not consent to receiving sexual messages or advances from Murdoch's sexual advances.  Am. Compl. ¶ 82.  After discovery, when the full range of text messages and other communications between McHenry and Murdoch will presumably have been adduced, Murdoch will be at liberty to renew his argument that McHenry invited sexualized banter.  But on the limited material cognizable on the pleadings, McHenry has stated claims for sexual harassment and discrimination under the NYCHRL.

ii.      Retaliation under the NYCHRL

The Amended Complaint also adequately pleads a *prima facie* case for retaliation under the NYCHRL against Murdoch.

First, it pleads that McHenry engaged in at least two protected activities: (1) making multiple complaints about Murdoch's sexual harassment, Am. Compl. ¶¶ 83–84, and (2) participating in an investigation into Murdoch's behavior, *id.* ¶¶ 102–106.[10]  *See Knight v.*

---

[10] The parties dispute whether the Amended Complaint pleads that McHenry rebuffed Murdoch's sexual advances, and whether a plaintiff's refusal of a co-worker's advances itself constitutes form of protected activity under the NYCHRL.  Murdoch Mem. at 14; Opp'n to Murdoch Mem. at 11–12; Murdoch Reply at 5–6.  *Compare Laurin v. Pokoik*, No. 02 Civ. 1938 (LMM), 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005), *with Gonzalez v. City of New York*, No. 15 Civ. 3158 (WFK) (CLP), 2015 WL 9450599, at *5 (E.D.N.Y. Dec. 22, 2015).  Because the Amended Complaint adequately pleads other forms of protected activity, the Court has no occasion at this stage to resolve that question.

*City of New York*, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004), *aff'd*, 147 F. App'x 221 (2d Cir.

2005) (summary order) (informal complaints constitute protected activity); *see also* N.Y.C.

Admin. Code § 8-107(7) (defining protected activities to include having "assisted the

commission or the corporation counsel in an investigation").

Second, the Amended Complaint adequately alleges that Murdoch was aware of, at

minimum, the investigation into his conduct towards McHenry.  It alleges that, during the second

investigation, investigators acquired allegedly doctored text messages "purportedly between Ms.

McHenry and Mr. Murdoch . . . contain[ing] two photos purported to be from Ms. McHenry to

Mr. Murdoch with her cleavage and nearly bare breast shown."  Am. Compl. ¶¶ 106–107.  It is

reasonable to infer that because the messages were between McHenry and Murdoch and because

McHenry claims that they were doctored, that the investigators obtained the messages from

Murdoch.  It is, in any event, reasonable to infer that investigators probing such claims would

interrogate the target of the claims.  Further, the Amended Complaint alleges that Murdoch (and

a Fox News colleague) "publicly mocked Fox's sexual harassment 'investigation' on social

media."  *Id.* ¶ 91; *see also id.* ¶ 162.  These allegations amply support the inference that Murdoch

learned of McHenry's complaints and her participation in the investigation.

Third, the Amended Complaint alleges retaliatory conduct which, under the NYCHRL

standard, was "reasonably likely to deter a person from engaging in protected activity."  *Xiang*,

2020 WL 248941, at *9.  Verbal attacks alone can meet this standard.  *See Mihalik*, 715 F.3d

at 116 (alterations in original) (holding defendant's comments that plaintiff "add[ed] nothing of

value," has "no fucking clue what [she was] doing," and was "pretty much useless"—made after

plaintiff's protected activity—were sufficient basis for a retaliation claim).  Here, the Amended

Complaint alleges that after McHenry complained and triggered the investigations, Murdoch,

while generally ceasing to speak to McHenry, lashed out at McHenry on the air and in front of a guest.  Am. Compl. ¶¶ 84–86.

Murdoch counters that his retaliatory behavior is not itself tied to McHenry's gender, Murdoch Reply at 4–5.  That is irrelevant.  Under the NYCHRL, to qualify as retaliatory, the defendant's conduct need only be such that it could reasonably deter a person from engaging in a protected activity.  *Xiang*, 2020 WL 248941, at *9.  Such conduct need not itself reference the protected characteristic of the plaintiff.

Murdoch further argues that his on-air statements pre-dated his knowledge of Fox News's investigation.  Murdoch Reply at 4.  The Amended Complaint, however, permits the inference that, by that time, he appreciated that McHenry had complained about him.  Regardless, the Amended Complaint alleges later conduct by McHenry—including his distribution of the doctored messages and photos of, purportedly, McHenry's cleavage—which, as pled, qualify as behavior likely to deter a person from engaging in protected activity.  Am. Compl. ¶¶ 105–106.

Fourth and finally, the Amended Complaint plausibly pleads a causal nexus between Murdoch's retaliatory acts and McHenry's protected activity.  Under the NYCHRL, a plaintiff is not required to show but-for causation.  *See Dodd*, 2020 WL 5750715, at *37.  Rather, a plaintiff need only show that her "protected activity was a motivating factor behind the defendant's retaliatory action."  *Philip v. Gtech Corp.*, No. 14 Civ. 9261 (PAE), 2016 WL 3959729, at *11 (S.D.N.Y. July 20, 2016).  Here, the inference of retaliatory causation is made plausible, based on the temporal proximity of Murdoch's acts to the complaint and investigation into his conduct; the suddenness of Murdoch's change in behavior, from making sexual advances towards her towards lashing out at her on the air and in front of a network guest and circulated doctored texts and images of her; and from the rage reflected in these acts themselves.  *See Gallo v. Alitalia-*

*Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 544 (S.D.N.Y. 2008) (finding causal connection plausibly pled under the higher NYSHRL standard, based on temporal proximity).  After discovery, Murdoch will be at liberty, of course, to account otherwise for his conduct towards McHenry, including by arguing, as his memorandum of law foreshadows, that his anger towards her did not result from her complaints or the investigation they caused, but from her having spurned him.

The Court accordingly denies Murdoch's motion to dismiss the retaliation claim.

b.   *Aiding and Abetting Sexual Harassment and Retaliation*

The Amended Complaint brings aiding and abetting claims under both the NYSHRL and the NYCHRL, alleging that Murdoch aided and abetted the sexual harassment of, and retaliation against, McHenry.

i.   Murdoch's Conduct as Predicate for Fox News's Principal Liability

Murdoch first argues that insofar as he is alleged to have sexually harassed McHenry and retaliated against her for her protected conduct seeking to hold him accountable, he cannot also be found liable for aiding and abetting, because, as a matter of law, a person cannot aid and abet his own wrongful conduct.  Murdoch Mem. at 17.  But while that legal proposition is correct, it does not carry the day here.  That is because, as the Second Circuit has held, "a co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL [or NYCHRL] even though that co-worker lacked the authority to either hire or fire the plaintiff."  *Feingold*, 366 F.3d at 158 (internal quotation and citation omitted). "This extends to personal liability 'for aiding and abetting allegedly unlawful discrimination by [an] employer *even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability*,' *so long as the employer's conduct has also been found to be*

*discriminatory under the NYSHRL*." *Xiang*, 2020 WL 248941, at *5 (alterations in original) (emphasis added) (quoting *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012)). Applied here, this principle would permit Murdoch to be found liable for aiding and abetting, provided Fox News was also found liable for the discriminatory or retaliatory conduct towards McHenry.

To be sure, this line of doctrine, which permits a principal violator also to be found liable as an aider and abettor provided that the employer is found to have participated in the violation, is not without critics. *See, e.g.*, *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps.*, 425 F. Supp. 3d 234, 244 n.10 (S.D.N.Y. 2019) (noting that *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), which first announced the above principle, creates "a strange and confusing circularity," but stating that the law of the Circuit "seems clear" (citation omitted)); *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008) ("The Court is mindful that the *Tomka* interpretation of § 296(6) is not without controversy. Nevertheless, until the Second Circuit revisits the issue, *Tomka* is the law in this Circuit." (internal quotation and citation omitted)); *Parra*, 48 F. Supp. 3d at 555  ("[An] individual defendant, who may have personally committed the discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer." (internal quotation and citation omitted)).  This Court, too, has remarked on the capacity of the holding in *Tomka* to yield circular results, in situations where the factual basis for the employer's liability was exclusively the conduct of the employee-defendant sought to be held liable as an aider and abettor.  *See, e.g.*, *Farmer*, 2020 WL 4194860, at *16;

*Dodd*, 2020 WL 5750715, at *36 n.12.[11]  Nonetheless, *Tomka* is Circuit law.  As such, Murdoch

may not obtain dismissal of the aiding and abetting claims at the threshold on the grounds that he

may not at once be found liable both as a principal and as an aider and abettor.[12]

> ii.    Aiding and Abetting Sexual Harassment and Gender
>        Discrimination

Murdoch's argument why the Amended Complaint does not plead a claim for aiding and

abetting sexual harassment or gender discrimination under the NYSHRL or the NYCHRL is that

it does not allege principal liability by Fox News for those wrongs.  Murdoch Mem. at 16, 18–

19, 22–23 (citing *ERA United Realty*, 251 A.D. 2d at 472).  That is wrong.  The Amended

Complaint adequately pleads NYSHRL and NYCHRL claims of sexual harassment against Fox

News as a principal.  And Fox News, notably, has not moved to dismiss the claims against it, but

instead has answered the complaint.  Murdoch's conduct as pled plausibly constituted, as

required by the NYSHRL, "'harassment . . . of such quality or quantity that a reasonable

employee would find the conditions of her employment altered for the worse.'" *Patane*, 508 F.3d

at 113 (quoting *Terry*, 336 F.3d at 148).  McHenry alleges that, spanning two or more months,

Murdoch, her fellow Fox News employee, sent her unwanted and degrading sexually explicit

messages, Am. Compl. ¶¶ 71–82, which she found harassing and about which she complained to

producer Rauchet on three occasions, *id.* ¶¶ 83–86.  The Amended Complaint further alleges that

---

[11] For this reason, Judge Furman has suggested that *Tomka* is, or should be, limited to cases in which multiple employees—not merely the defendant at issue—participated in the unlawful conduct of one another.  *See Boyce v. Weber*, No. 19 Civ. 3825 (JMF), 2020 WL 5209526, at *2 n.3 (S.D.N.Y. Sept. 1, 2020).

[12] For similar reasons, Murdoch's claim that employees who are not supervisors cannot be liable under the NYSHRL for aiding and abetting fails.  *See* Murdoch Mem. at 16 n.13 (citing *Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334 (2d Dep't 1997)).  In *Tomka*, the Second Circuit held that an employee who "actually participates in the conduct giving rise to a discrimination claim" can be held liable as an aider and abettor, and did not require such an employee to hold a supervisory post.  *See* 66 F.3d at 1317.

Fox News, McHenry and Murdoch's employer, knew and had reason to know of this harassment in the workplace, *see id.*, but did not take appropriate action, *id.* ¶¶ 100–109.  *See Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 265 (E.D.N.Y. 2009) ("Where . . . the alleged harasser is a co-worker rather than a supervisor, an employer may be held liable where it 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997))).

These allegations plead a claim against Fox News for principal liability under the NYSHRL.  It thus necessarily satisfies the NYCHRL's more relaxed standards for liability.  And because the pleadings must be taken as true on a motion to dismiss, Fox News's liability under both laws as a principal must be assumed.  Under *Tomka*, Fox News's principal liability provides a basis for the aiding and abetting claims against Murdoch, whose actual participation in the sexual harassment of McHenry is well pled.  Accordingly, the Amended Complaint plausibly pleads claims against Murdoch under the NYSHRL and NYCHRL for aiding and abetting sexual harassment.

### iii.    Aiding and Abetting Retaliation

For much the same reasons, Murdoch's challenge to the claims that he aided and abetted retaliation under the NYSHRL and the NYCHRL fails.  Murdoch Mem. at 16, 20–22, 23.  The Amended Complaint plausibly pleads retaliation claims against Fox News as a principal (and Fox News has not moved to dismiss these).  It alleges that McHenry made multiple complaints to producer Rauchet about Murdoch's harassment of her, and participated in at least one Fox News investigation, *see* Am. Compl. ¶¶ 83–88, 102–106; that as a result of her complaints, Murdoch was promoted at Fox News, while McHenry was "shunn[ed]" and excluded from on-air and promotional opportunities that otherwise would have been afforded her, *see id.* ¶¶ 88–99, 109, 113–122; and that the retaliatory nature of these adverse actions is fairly inferred from their

temporal proximity to McHenry's complaints.  Indeed, McHenry's retaliation claim against Fox News is more fulsome than her harassment claim in that, as pled, Murdoch was the only participant in the harassment campaign, whereas others at Fox News were allegedly party to the exclusion of her from promotional opportunities within Fox Nation.

In all events, because the Amended Complaint states viable principal claims of retaliation against Fox News under the NYSHRL and the NYCHRL, it supplies a basis for aiding and abetting claims against Murdoch, whose actual and intentional participation in the retaliation against McHenry is well pled.

The Court therefore denies Murdoch's motion to dismiss the aiding and abetting claims against him.

c.      *Intentional Infliction of Emotional Distress*

Under New York law,[13] a claim for intentional infliction of emotional distress ("IIED") has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).  Murdoch disputes that the first element has been plausibly pled.[14]

---

[13] In their submissions, Murdoch and McHenry apply New York law to McHenry's claims for intentional infliction of emotional distress, and the Amended Complaint does not supply any reason to view another state's law as governing.

[14] In his reply, Murdoch states, for the first time and without elaboration, that the Amended Complaint fails to allege the second, third, and fourth elements.  *See* Murdoch Reply at 10 ("McHenry also has failed to allege the remaining elements of an IIED claim.  She does not allege that Mr. Murdoch intended to cause her any emotional distress, a causal connection between any of his alleged conduct and her alleged injury, or that she has suffered severe emotional distress.").  The Court finds these arguments waived.  *See, e.g.*, *Lima v. Hatsuhana of USA, Inc.*, No. 13 Civ. 3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal citation and quotation omitted)).

That element, the outrageousness of the conduct, "serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Id.*  Indeed, liability under IIED is proper only where the "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303 (1983) (internal citation and quotation omitted).  This standard is "rigorous[] and difficult to satisfy." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 81 N.Y.2d at 122).

Under New York law, "sexual harassment can give rise to a claim for intentional infliction of emotional distress." *Bonner v. Guccione*, 916 F. Supp. 271, 276 (S.D.N.Y. 1996) (quoting *Collins v. Willcox Inc.*, 600 N.Y.S.2d 884, 885 (Sup. Ct. 1992)).  "In the case of sexual harassment, New York courts have recognized that it is the continuous nature of the conduct that may make it so outrageous and extreme as to be actionable." *Id.*

Murdoch's challenge to this claim presents a more substantial question than his earlier challenges.  But in the end, the Court finds McHenry's IIED claim plausible.  She alleges that she was subjected to a campaign of unwanted and crude sexual texts spanning two months, from a co-worker with whom her job duties required her to spend concentrated time.  *See* Am. Compl. ¶¶ 71–80.  Considered in isolation, "crude and offensive statements of a sexually derisive nature" in the workplace, even where sufficient to establish a sexual harassment claim under the NYSHRL, do not equate automatically to outrageous conduct sufficient to sustain an IIED claim. *Shea v. Cornell Univ.*, 192 A.D.2d 857, 858 (3d Dep't 1993).  But there is more here.  On February 22, 2019, Murdoch allegedly verbally assaulted McHenry.  Am. Compl. ¶ 84.  On an unspecified date during early 2019, Murdoch allegedly circulated doctored text messages,

including photos purported to be of McHenry's near-naked breasts, to others in the workplace. *Id.* ¶¶ 106–107. And, as pled, Murdoch instigated the multi-dimensional campaign to retaliate against McHenry, which resulted in her being shunned from valued platforms on Fox Nation where she otherwise would have been welcome. These allegations, considered as a whole, are sufficient to plead a claim of extreme and outrageous conduct. *See Bonner*, 916 F. Supp. at 278 (sustaining claims for IIED where plaintiffs pled a continuous course of harassing conduct).

The Court accordingly denies Murdoch's motion to dismiss the IIED claim. At summary judgment, after discovery, Murdoch will be at liberty to argue, if the evidence so permits, that the facts do not rise to the level of permitting this claim to proceed to trial.

### 2.   Claims Against Finley

The Amended Complaint brings claims against Finley for aiding and abetting sexual harassment, gender discrimination, and retaliation under the NYSHRL, and for aiding and abetting gender discrimination and retaliation under the NYCHRL.

The Amended Complaint contains sparse allegations, to the say least, against Finley, a Fox News vice president. It alleges that on April 12, 2019, McHenry's agent emailed Finley and reported McHenry's "intolerable and hostile work environment" and Rauchet's "inappropriate reaction" to McHenry's complaint. Am. Compl. ¶ 87; April 12, 2019 Email. Otherwise, the only other allegations against Finley are the general statements that he "failed to take any appropriate action to correct" the harassment and discrimination of McHenry, Am. Compl. ¶ 160, and retaliated against McHenry "by not booking her on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances," *id.* ¶ 186.

These allegations are inadequate to plead that Finley actually participated in aiding and abetting harassment, discrimination, or retaliation against McHenry. McHenry's April 12, 2019

email, which is cognizable here, does not mention sexual harassment or gender discrimination. *See id.* ¶ 87; April 12, 2019 Email.  And even assuming that the email had been explicit as to these violations of law, the allegations in the Amended Complaint do not support an inference that Finley acted to aid and abet harassment, discrimination, or retaliation of McHenry.

As to the aiding and abetting harassment and discrimination claims, there are no allegations that Murdoch's sexual harassment of McHenry continued after the email put Finley on notice of his misconduct.  *See* Am. Compl. ¶ 81.  And the Amended Complaint lacks non-conclusory allegations that Finley knew of Murdoch's harassment of McHenry while it was ongoing.  McHenry argues that the Amended Complaint pleads that Finley "oversees Fox Nation," from which "it can be reasonably inferred" that Finley knew of the harassment, and of Murdoch's and another Fox News personality's mockery of McHenry.  Opp'n to Fox Corp. Mem at 21–22.  But this hazy argument overreaches.  It would attribute to a supervisory executive, purely on account of title and responsibilities, real-time omniscience about personnel developments in a company.  It lacks specific allegations supporting that Finley knew of Murdoch's harassment prior to its cessation.

As to its claims of aiding and abetting retaliation, a failure by Finley to take remedial measures, after receiving McHenry's April 12, 2019 Email, could expose Finley to liability for actual participation in, or aiding and abetting, Fox News's or Murdoch's unlawful retaliation. *See Parra*, 48 F. Supp. 3d at 555.  But the Amended Complaint does not concretely plead a failure by Finley to act in response to the email.  On the contrary, it alleges that, after McHenry's email, Fox News separated McHenry and Murdoch and conducted two investigations, including by an outside law firm.  Am. Compl. ¶¶ 89, 100–109.  And while McHenry is unimpressed by these investigations, her Amended Complaint does not concretely allege any conduct by Finley

to guide those investigations, or indeed any conduct by Finley in connection with them, tending to make these investigations "shams."

As to the claims that Finley directly aided and abetted Fox News's retaliation against McHenry, *see id.* ¶ 186, the Amended Complaint does not contain any allegations tying Finley to the acts of retaliation. McHenry emphasizes Finley's general oversight of Fox Nation, arguing that it can be inferred that Finley, *ex officio*, must have "participated" in the decision not to book McHenry on certain shows or not to invite her to Fox Nation events. Opp'n to Fox Corp. Mem. at 22. But that is conclusory. The Amended Complaint, devoid of any concrete allegations about Finley's activities or sources of knowledge, does not supply a factual basis on which to infer that Finley was aware of a decision to limit McHenry's bookings on other shows or invitations to events. It does not, for example, allege that Finley's job duties gave him any role in bookings on shows or invitations to Fox Nation events.

The Amended Complaint thus lacks well-pled allegations that Finley actually participated in Fox News's harassment, discrimination, and retaliation. The Court thus dismisses all claims against Finley. *See Fried*, 2011 WL 2119748, at *7–8 (dismissing aiding and abetting claims for failure to allege facts plausibly supporting actual participation in unlawful discrimination).

### 3. Claims Against Mekeel

The Amended Complaint brings claims against Mekeel for aiding and abetting sexual harassment, gender discrimination, and retaliation under the NYSHRL, and aiding and abetting gender discrimination and retaliation under the NYCHRL.

As alleged, on or around April 17, 2019, Mekeel reached out to McHenry, who sent Mekeel screenshots of some of Murdoch's text messages. *Id.* ¶ 88. Mekeel then "requested every text message ever exchanged" between McHenry and Murdoch and "essentially asked Ms. McHenry what she had done to provoke" Murdoch. *Id.* The Amended Complaint further alleges

that Mekeel "failed to take an appropriate action" to stop the harassment and discrimination of McHenry, *id.* ¶ 134, and retaliated against her, *id.* ¶ 186.

These allegations are inadequate to plead that Mekeel actually participated in aiding and abetting harassment, discrimination, or retaliation against McHenry.

With respect to aiding and abetting harassment, McHenry first contends that Mekeel's question to McHenry as to what she had done to "provoke" Murdoch is itself discriminatory and retaliatory. Arg. Tr. at 58. But this comment by a Human Resources official, even if construed to bespeak factual skepticism by Mekeel of McHenry's grievance, does not mean that Mekeel shared the alleged purpose of Fox News or its employee Murdoch to sexually harass McHenry or retaliate against her. *See Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) ("Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent.").

McHenry next argues, in defense of her aiding and abetting claims, that, based on her complaint to Mekeel, Mekeel knew about harassment and failed to stop it. Am. Compl. ¶¶ 88, 186. The parties dispute whether, as an HR representative, Mekeel had a duty to take remedial measures in response to McHenry's complaint and whether her failure to do so provides a basis for an aiding and abetting harassment claim under, at a minimum, the NYCHRL. *Compare* Fox Corp. Mem. at 19, *with* Opp'n to Fox Corp. Mem. at 22. Regardless, the Amended Complaint does not plead that McHenry made any complaint to Mekeel before April 17, 2019, or thereafter, or that—save for the doctored photos which were distributed at an unspecified time—Murdoch's sexual harassment of McHenry continued after McHenry met with Mekeel. *See* Am. Compl. ¶ 81. And it pleads that, after that meeting, Fox News separated McHenry and Murdoch and conducted investigations into, at least, McHenry's harassment. *Id.* ¶¶ 89, 100–109.

Notably, the Amended Complaint does not plead that Mekeel failed to take any particular action to arrest ongoing harassment, or that Murdoch's harassment continued after the April 17, 2019 meeting.  And it does not plead facts giving rise to the inference that Mekeel was aware of, or participated in, a later scheme to retaliate against McHenry.  On the contrary, it indicates that the corporate response to McHenry's complaint, after her meeting with Mekeel, was left in the hands of outside professionals (the law firm DLA Piper and an unnamed investigator).  *Id.* ¶¶ 101–102. These allegations do not plausibly plead that Mekeel, after meeting with McHenry, actively participated in a sham investigation of McHenry's allegations or otherwise facilitated ongoing harassment or retaliation.

McHenry argues that it can be "reasonably inferred" that Mekeel "participated in the decision to minimize" McHenry's role at Fox News or her public appearances, "in a misguided attempt to minimize [Fox Corp.'s] liability."  Opp'n to Fox Corp. Mem. at 23.  But the Amended Complaint does not allege facts supporting this thesis.  It makes only the conclusory allegation that Mekeel retaliated against McHenry "by not booking her on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances."  Am. Compl. ¶¶ 186–187.  But it does not plead any facts that would support the inference that Mekeel played a role, let alone that in doing so, she shared a discriminatory or retaliatory purpose with Fox News, in diminishing McHenry's professional opportunities or stature.  In this respect, the allegations against Mekeel sharply contrast with those against Rauchet.  *Compare id.* (conclusorily alleging that Mekeel and all entity and individual defendants played a direct role in retaliation against McHenry), *with id.* ¶ 93 (specifically pleading that Rauchet is the executive producer of *Watters' World*, which ceased to book McHenry after her complaint while continuing to book Murdoch).  Mekeel's position as an HR

representative does not, without more, give rise to the inference that she had any role in Fox News's booking decisions.

Accordingly, the Court dismisses all claims against Mekeel.

### 4.      Claims Against Rauchet

The Amended Complaint brings claims against Rauchet for aiding and abetting sexual harassment, gender discrimination, and retaliation under the NYSHRL, and aiding and abetting gender discrimination and retaliation under the NYCHRL.

The Amended Complaint contains more substantial factual allegations against Rauchet, the executive producer of *Un-PC*, than against Finley or Mekeel.  Although the claims against her for aiding and abetting sexual harassment and gender discrimination do not state a claim, the claims for aiding and abetting retaliation are plausibly pled.

The Amended Complaint alleges that McHenry made three complaints to Rauchet: (1) in January 2019, she reported that Murdoch had sent McHenry "inappropriate and sexual harassing text messages," Am. Compl. ¶ 83; (2) on February 22, 2019, she made a "sexual harassment" complaint after Murdoch had "lashed out" at McHenry on the set, *id.* ¶ 84; and (3) in April 2019, she made a complaint regarding Murdoch's "sexual harassment and retaliatory abuse," *id.* ¶ 86. The Amended Complaint alleges that Rauchet did not report either of the first two complaints to Human Resources.  *Id.* ¶ 84.  Rauchet does not dispute that she was a supervisor of McHenry's, *see* Fox Corp. Mem. at 19, or that, as such, she had a duty to take adequate remedial measures in response to a complaint of sexual harassment.  *See Parra*, 48 F. Supp. 3d at 555.

This sequence of events does not sustain McHenry's claim that Rauchet aided and abetted Murdoch's sexual harassment or discrimination.  That is because, by the Amended Complaint's timeline, the harassment of McHenry had ended before her first complaint to

Rauchet.[15]  Am. Compl. ¶ 81.  Thus, like Mekeel and Finley, Rauchet, based on the allegations

pled, did not learn of any sexual harassment of McHenry until after it had ended.  Accordingly,

she could not have acted to stop ongoing harassment.  *See Erasmus*, 2015 WL 7736554, at *9

(dismissing aiding and abetting harassment claim where there was "no allegation that [the

defendant] participated in any harassing conduct or knew about any such conduct while it was

ongoing").

The Amended Complaint does, however, adequately plead that Rauchet aided and abetted

Fox News's and Murdoch's retaliation against McHenry.  It alleges that, before she complained

to Rauchet, McHenry had been a regular on Fox News Channel show *Watters' World*, for which

Rauchet also serves as executive producer.  Am. Compl. ¶ 93.  And, it alleges, since making her

complaints, McHenry has not been booked on the show, "despite communication from bookers

that they wanted her to appear."  *Id.*  Viewed in light of the allegations that Rauchet has ceased

speaking to McHenry and that she told McHenry that Fox News "never wanted her" and could

replace her, the inference is reasonable that Rauchet, as executive producer of both *Un-PC* and

*Watters' World*, participated in the decisions to cease booking McHenry on the show, and did so

in retaliation for McHenry's complaints about workplace misconduct.

Rauchet counters that individual producers, not the executive producer, are responsible

for booking guests on *Watters' World*.  Arg. Tr. at 24.  Rauchet's claim, that she has no authority

over or responsibility for such bookings, however, presents a factual question, which the parties

---

[15] At argument, McHenry sought to rescue these claims by noting Murdoch's alleged circulation of doctored photographs of her, an incident of harassment which counsel represented occurred after December 2018.  Arg. Tr. at 61.  The Amended Complaint, however, does not allege that date.  It alleges that McHenry was informed of the existence of these photographs in October 2019, but it does not state when the photographs were created or circulated.  Am. Compl. ¶¶ 105–107; Arg. Tr. at 60–61.

are at liberty to explore in discovery.  The pleadings and materials cognizable thereon do not contain any such factual representation.  Accordingly, the Amended Complaint alleges facts that support a reasonable inference that Rauchet actually participated in retaliation against McHenry.

The Amended Complaint also adequately alleges that Rauchet "share[d] the intent or purpose of" Fox News or Murdoch in retaliating against McHenry.  *Fried*, 2011 WL 2119748, at *8.  It alleges that in November 2019, Rauchet told a Fox News guest to "keep her distance" from McHenry because McHenry was "drama" for suing the network.  Am. Compl. ¶ 99.  A finder of fact, crediting this statement as true, could infer that Rauchet was hostile to McHenry on account of her complaints and sought to retaliate against her for them.

Accordingly, as to Rauchet, the Court dismisses the claims for aiding and abetting sexual harassment and gender discrimination under the NYSHRL and NYCHRL but sustains the claims for aiding and abetting retaliation under both laws.

### 5.    Claims Against Fox Corp.

McHenry's Amended Complaint brings principal claims under the NYSHRL and the NYCHRL against Fox Corp., based on the theory that Fox Corp. and Fox News are a "single employer" of McHenry, so to make Fox Corp. liable alongside Fox News for violations of law by the latter.  These claims are for gender discrimination, sexual harassment, and retaliation.  The Amended Complaint also brings aiding and abetting claims against Fox Corp.—under the NYSHRL, for aiding and abetting sexual harassment, gender discrimination, and retaliation; and under the NYCHRL, for aiding and abetting gender discrimination and retaliation.

The Court first examines whether the Amended Complaint has sufficiently pled facts to support a single employer theory and then turns to the aiding and abetting claims.

a.    *Single Employer Liability*

An essential element of a claim under the NYSHRL or the NYCHRL is the existence of

an "employer-employee relationship." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)

(employment relationship required to sustain Title VII and analogous NYSHRL claims); *see Ruiz*

*v. New Avon LLC*, No. 18 Civ. 9033 (VSB), 2019 WL 4601847, at *12 (S.D.N.Y. Sept. 22, 2019)

(employment relationship required to sustain claims under NYSHRL and NYCHRL);

*Weerahandi v. Am. Statistical Ass'n*, No. 14 Civ. 7688 (AT), 2015 WL 5821634, at *7 (S.D.N.Y.

Sept. 30, 2015) ("[T]he NYSHRL and the NYCHRL prohibit discriminatory conduct directed at

current or prospective employees, and thus does not include bias directed at third parties not in

an employment relationship with the allegedly offending employer." (internal quotation and

citation omitted)).

Under Title VII, where, as here, a plaintiff does not allege that she was a direct employee

of a parent company or that she was jointly employed by the parent company and the corporate

subsidiary that was her direct employer,[16] "a parent company is considered an 'employer' of its

subsidiary's employees only when the parent and subsidiary represent a single, integrated

enterprise." *Shukla v. Viacom Inc.*, No. 18 Civ. 3522 (PAE), 2019 WL 1932568, at *6 (S.D.N.Y.

May 1, 2019) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995)).

That same standard applies to claims under the NYSHRL and NYCHRL.  *See, e.g.*, *Arculeo*, 425

---

[16] McHenry's Amended Complaint pleads that Fox News was her direct employer.  *See* Am.
Compl. ¶ 64 (alleging that McHenry's contract is with Fox News).  It does not plead facts
plausibly supporting that McHenry was a direct employee of Fox Corp.'s, or that Fox Corp. and
Fox News jointly employed her.  Nor, notably, does McHenry so argue in her opposition to Fox
Corp.'s motion to dismiss.  Her sole theory in suing Fox Corp. is that it and Fox News
constituted a single employer.  *See Popat v. Levy*, 253 F. Supp. 3d 527, 538 (W.D.N.Y. 2017)
(quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)) (single
employer doctrine and joint employer doctrine are two "distinct" doctrines).

F.3d at 198 (applying single-employer doctrine to claims under NYSHRL); *Shukla*, 2019 WL

1932568, at *6 (applying single-employer doctrine to claims under NYSHRL and NYCHRL).

The Second Circuit has adopted a widely used four-part test to determine whether a

parent and subsidiary constitute a single employer.  It examines evidence of "(1) interrelation of

operations, (2) centralized control of labor relations, (3) common management, and (4) common

ownership or financial control."  *Cook*, 69 F.3d at 1240 (internal citation and quotation omitted).

Of these factors, the most "critical" is the second: centralized control of labor.  *Id.* at 1240–41.

Indeed, the Circuit has stated that "the critical question to be answered then is:  What entity made

the final decisions regarding employment matters related to the person claiming discrimination?"

*Id.* (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)); *see Brown*, 756 F.3d

at 227 (control of labor relations is the central concern).  At the pleading stage, however, a

plaintiff need not plead that the parent exercises "total control" over hiring decisions as long as

she pleads facts supporting a reasonable inference that there is "an amount of participation by the

parent that is sufficient and necessary to the total employment process."  *Brown*, 756 F.3d at 227

(quoting *Cook*, 69 F.3d at 1241).

Often, whether a parent entity exercises sufficient control over a subsidiary such that the

two are a single entity is "a question of fact not suitable to resolution on a motion to dismiss."

*Id.* at 226.  But a plaintiff must "do more than simply state legal conclusions and recite the

elements of the 'single employer' standard to survive a motion to dismiss."  *Fried*, 2011 WL

2119748, at *5.  A complaint must still plead "sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S.

at 570).  "[C]onclusory, *ipse dixit* assertions" about the degree of control the parent exercised

over the subsidiary do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal*. *Fried*, 2011 WL 2119748, at *5.

The Amended Complaint here falls short of this standard.  Regarding the second, and most important, factor, *i.e.*, the centralized control of labor relations, the Amended Complaint alleges, on information and belief, that Fox Corp. "makes hiring and firing decisions for Fox News" and "controls the discipline, pay, insurance, records, and supervision of Fox News."  Am. Compl. ¶ 7.  But these statements are conclusory.  And the scant additional allegations in the Amended Complaint do not make reasonable the inference that Fox Corp. exercised control over Fox News's labor relations.  The Amended Complaint states that Fox Corp. "as the parent corporation . . . hired Mr. Murdoch and controlled his employment, including the decision to retain or terminate him," *id.* ¶ 9, and makes similar claims with respect to Rauchet, Finley, and McHenry, *see id.* ¶¶ 10 ("Upon information and belief, Fox Corp[.], as the parent corporation for Fox News . . . , hired Ms. Rauchet and controlled her employment, including the decision to retain or terminate her."), 11 ("Upon information and belief, Fox Corp[.], the parent corporation for Fox News . . . , hired Mr. Finley and controlled his employment, including the decision to retain or terminate him."), 64 ("Upon information and belief, Fox Corp[.], as the parent corporation of Fox News . . . and Fox Nation, made the decision to hire Ms. McHenry.").  But these statements, devoid of any factual detail relating to the details or process of these hires, are also conclusory.[17]  And the fact that Fox Corp. is the parent of Fox News does not itself evidence control of labor relations, for treating that fact as dispositive would vitiate the purpose of the

---

[17] As Fox Corp. noted during argument, the Amended Complaint's claim that Fox Corp. made the decision to hire McHenry is undermined by its claim that Finley, "Vice President of Fox News Channel" noticed McHenry's talent, after which "Fox News hired Ms. McHenry to host *Un-PC . . . .*"  Am. Compl. ¶ 64; *see* Arg. Tr. at 9.

single-employer inquiry.  *See Cook*, 69 F.3d at 1240 (a "parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence" of one or more of the four factors (internal quotation and citation omitted)); *Brathwaite v. Sec. Indus. Automation Corp.*, No. 06 Civ 300 (ERK), 2006 WL 8439237, at *4 (E.D.N.Y. Dec. 1, 2006) ("[T]he existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII.").  Nor does the "naked assertion" that an employee, in this case Mekeel, worked for the parent as well as the subsidiary suffice.  *See Lora v. Centralized Mgmt. Serv., Inc.*, No. 18 Civ. 4253 (NSR), 2020 WL 3173025, at *6 (S.D.N.Y. June 12, 2020).  The Amended Complaint's claims that Murdoch, Finley, Rauchet, and McHenry were each hired and retained by Fox Corp., without more, are naked conclusions unworthy of weight.

The one concretely pled fact in the Amended Complaint tending to support McHenry's theory that Fox Corp. and Fox News are her single employer is that the companies share HR official Mekeel, who participated in the internal investigation of McHenry's complaint.  Am. Compl. ¶¶ 12, 88.  The Amended Complaint alleges that Fox Corp. "investigates complaints made by Fox News" and that Fox Corp. "employees and senior management, such as Monica Mekeel, performed job duties for both Fox Corporation and Fox News."  *Id.* ¶ 7.  Consistent with that, it alleges that on April 17, 2019, Mekeel reached out to McHenry and requested all text message that McHenry exchanged with Murdoch.  *Id.* ¶ 88.  Mekeel also asked McHenry "what she had done to provoke" Murdoch.  *Id.*  But these allegations, although relevant to the merits of McHenry's claims against Fox News, are insufficient to plead that Fox Corp. had the day-to-day involvement in Fox News's operations contemplated by the single-employer test.

*St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301 (S.D.N.Y. 2013), on which McHenry relies in arguing that Mekeel's dual role establishes that the two Fox entities were a single employer, *see* Opp'n to Fox Corp. Mem. at 8, in fact underscores the insufficiency of the pleadings against Fox Corp.  In *St. Jean*, the HR Director for the controlling company "investigated Plaintiff's claim, interviewed Plaintiff[,] personally fired Plaintiff," and signed plaintiff's termination letter.  963 F. Supp. at 310.  Here, though, contrary to McHenry's depiction in her memorandum of law, the Amended Complaint does not even allege that Mekeel "investigated [McHenry's] complaint to Fox News."  Opp'n to Fox Corp. Mem. at 8.  It alleges only that McHenry met with Mekeel once and provided copies of her text messages exchanged with Murdoch.  Am. Compl. ¶ 88.  Afterwards, it alleges, *Fox News* hired the DLA Piper law firm, and later an unnamed investigator, to investigate her claims.  *Id.* at ¶¶ 100–105.  The Amended Complaint does not allege that Mekeel or any other Fox Corp. employee played any role in any investigation into McHenry's grievances after the April 17, 2019 meeting.  And the Amended Complaint is devoid of pleadings akin to *St. Jean*'s allegation that the parent's HR Director personally fired the plaintiff-employee and signed her termination letter.

As to the other single employer factors:  The Amended Complaint does not adequately plead the first, *i.e.*, that Fox Corp. and Fox News had interrelated operations.  It conclusorily alleges that Fox Corp. approves "all significant decisions made by Fox News" and that Fox Corp. "establishes the operating and management practices for employees at Fox News."  Am. Compl. ¶ 7.  But it does not contain any concrete factual allegations substantiating this claim. *See Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7–8 (S.D.N.Y. Feb. 28, 2013) (complaint properly put defendants "on notice" of single employer theory by alleging facts supporting an inference of common management, such as a handbook

provided by parent which outlines all "policies regarding timekeeping, paydays, advances, employee loans, work schedules, pay deductions, and setoffs."). That McHenry's allegations as to this factor are made "on information and belief" and are un-accompanied by a statement of the facts upon which the belief is founded, *id.*, reinforces the inadequacy of these pleadings.

The remaining two factors, common management and common ownership, are "less important as they represent ordinary aspects of the parent-subsidiary relationship." *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 253–54 (S.D.N.Y. 2007) (internal quotation and citation omitted), *amended* (Aug. 16, 2007). With respect to this factor, the Amended Complaint alleges that Fox News CEO Suzanne Scott reports to Fox Corp. CEO and Executive Chairman Lachlan Murdoch, Am. Compl. ¶ 7, consistent with the fact that Fox Corp. is Fox News's ultimate parent, *see id.* ¶ 6; Fox News Answer ¶ 6. But the fact of a parent-subsidiary relationship does not establish that the two functioned as an employee's single employer. *See Cook*, 69 F.3d at 1240; *Brathwaite*, 2006 WL 8439237, at *4. That Fox News's CEO reports to Fox Corp.'s CEO and Executive Chairman Lachlan is consistent with common arrangements between parents and subsidiaries. Even complaints alleging that a parent and subsidiary *share* a high-level officer, such as a CEO or board member, have been held not to thereby allege sufficient common management or ownership to support finding a single-employer arrangement. *See, e.g.*, *Brathwaite*, 2006 WL 8439237, at *3–4.

Finally, McHenry contends that her allegations "implicate" Fox Corp. in Fox News's alleged retaliation against her. Opp'n to Fox Corp. Mem. at 7. But to the extent that Fox Corp.'s participation in Fox News's alleged wrongs here could support a single-employer claim, the Amended Complaint falls short of pleading Fox Corp.'s direct participation in retaliation. The retaliatory allegations instead center on *Fox News*'s having iced McHenry outand boosted

Murdoch after McHenry's complaint.  *See, e.g.*, Am. Compl. ¶¶ 89 (alleging Fox News's

promotion of Murdoch to his own show and his continued appearances on Fox News Channel

shows), 109 (alleging that Fox News "shunn[ed]" McHenry while "rewarding Murdoch").  The

Amended Complaint, read as a whole, does not plead that Fox Corp. exercised control over any

of the actions "lying at the core" of McHenry's complaint.  *Brown*, 756 F.3d at 228.

McHenry's claims thus fall considerably short of those in cases in which allegations

about a parent corporation and its subsidiary were held adequately to plead a single employer.

Two such cases, involving television networks and their parents, reflect the greater detail and

specificity of the allegations there.  In *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505

(S.D.N.Y. 2016), the plaintiff worked for a health and wellness network owned by Asia TV, an

alleged subsidiary or licensee of ZEE Entertainment Enterprises, Ltd.  *Id.* at 510.  The plaintiff

alleged that ZEE and ASIA TV were his single employer for purposes of his age discrimination

claim because, *inter alia*, a ZEE board member visited Asia TV twice a month; met with

employees, including the plaintiff, to "review their performance evaluations";  "approved

departmental budgets and expenses"; "reviewed employee responses to a survey with employees

individually"; "established particular policies at Asia TV governing employee duties"; and "met

with several high-ranking Asia TV employees in ZEE's offices in India" to "discuss business

strategy."  *Id.* at *518.  Similarly, in *Murphy v. S.W. Networks*, No. 97 Civ. 7031 (HB),

1998 WL 386436 (S.D.N.Y. July 9, 1998), the plaintiff alleged, *inter alia*, that Sony, the parent

company of her former employer S.W. Networks, was part of a single employer because Sony

"provided her with all her orientation information stating 'Welcome to Sony'"; listed plaintiff on

"a Sony list of directors and department heads"; provided plaintiff with "a Sony corporate credit

card"; sent a Sony Human Resources director to attend her termination meeting, where the

director then "handed plaintiff a severance agreement to execute between Sony and plaintiff releasing Sony from all claims arising in connection with her employment with Sony." *Id.* at *4.

Accordingly, the Court holds, the Amended Complaint fails to allege sufficient facts from which the inference reasonably arises that the Fox Corp. and Fox News were McHenry's single employer. Although McHenry's claims against Fox News are well pled and will move forward, the Court therefore must dismiss McHenry's claims against Fox Corp. for gender discrimination, sexual harassment, and retaliation. *See, e.g.*, *Fried*, 2011 WL 2119748, at *5–6 (dismissing discrimination claims against parent where allegations that parent and subsidiary acted as single employer were "*ipse dixit*" assertions and otherwise inadequate to allege that parent exercised control over subsidiary's labor relations); *Ruiz*, 2019 WL 4601847, at *13–14 (dismissing claims against parent where factual allegations were "bare-bones" and "conclusory").

       b.    *Aiding and Abetting Harassment, Discrimination, and Retaliation*

In an alternative bid to hold Fox Corp. liable, McHenry pursues aiding and abetting claims against it. But the Amended Complaint does not allege facts from which one could reasonably infer that Fox Corp. or its employees actually participated in Fox News's harassment or retaliation of McHenry, so as to be liable on an aiding and abetting theory. The only specifically pled facts concern the actions of HR executive Mekeel, who performed duties for both Fox Corp. and Fox News. *See supra* pp. 32–35; Am. Compl. ¶¶ 7, 88. Accordingly, McHenry's aiding and abetting claims against Fox Corp. fail for the same reasons that the aiding and abetting claims against Mekeel fail.

With respect to harassment, the Court has already explained why the allegations with respect to Mekeel do not permit an aiding and abetting claim against her. In particular, by the date Mekeel was first on notice of such conduct (April 17, 2019), the harassment had ended. *See* Am. Compl. ¶ 81. And the one remark attributed to Mekeel—that she asked McHenry what she

had done to "provoke" Murdoch—cannot support liability against Mekeel, *Luka*, 263 F. Supp. 3d at 487, let alone demonstrate that her co-employer Fox Corp. "condoned and approved" of Murdoch's "discrimination and retaliation," Opp'n to Fox Corp. Mem. at 19.  Skepticism by a corporation's HR representative of a victim's harassment claim is, without more, distinct from active participation in the harassment itself or from retaliation against the complainant.  And the Amended Complaint does not plead other potentially discriminatory or harassing comments by Mekeel or any other Fox Corp. employee.  Nor does it plead that Mekeel or Fox Corp. failed to take any particular action to stop ongoing harassment prior to McHenry's meeting with Mekeel.  The Amended Complaint thus does not allege Mekeel's actual participation in the harassment, as required for aiding and abetting liability.  *See Farmer*, 2020 WL 4194860, at *16.

Finally, with respect to aiding and betting retaliation, the Amended Complaint makes only the conclusory allegation that Mekeel retaliated "by not booking [McHenry] on Fox News Channel shows, not inviting Ms. McHenry to Fox News events, and shutting her out of Fox News Channel appearances."  Am. Compl. ¶ 186.  But this allegation is conclusory.  It is not supported by well-pled facts indicating that Mekeel's HR duties gave her a role in Fox News's booking decisions.

The Amended Complaint's remaining allegations relating to its claim that Fox Corp. aided and abetted harassment or retaliation by Murdoch or Fox News are either conclusory, *see id.* ¶ 9 (alleging that Fox Corp. "as the parent corporation" hired Murdoch), 135 (alleging that the "[e]ntity Defendants discriminated against Plaintiff by imposing a hostile work environment upon Plaintiff by condoning the conduct of its employees and managers"), or do not allege concrete involvement in relevant events by Fox Corp. or its employees, *see id.* ¶¶ 89, 91, 115

(alleging that Fox News and its employees retaliated against McHenry and failed to discipline Murdoch and other Fox News employees).

Accordingly, the Amended Complaint lacks well-pled allegations that Fox Corp. actually participated in McHenry's harassment, discrimination, or retaliation, so as to be liable as an aider and abettor. *See Fried*, 2011 WL 2119748, at *7–8.  The Court therefore dismisses the claims against Fox Corp. for aiding and abetting harassment, discrimination, and retaliation under the NYSHRL and the NYCHRL.

### C.    Dismissals with Prejudice

This is McHenry's second attempt at pleading the claims the Court is today dismissing. And in filing the Amended Complaint, McHenry had the benefit of the motions to dismiss the original Complaint by Murdoch, Dkts. 31–33, and Fox Corp., Finley, Mekeel, and Rauchet, Dkts. 34–35.  After those motions were filed, the Court gave McHenry the choice either to oppose the motions or to amend the Complaint to fortify her claims, and notified her that this was her final opportunity to amend.  *See* Dkt. 37.  McHenry chose to amend, Arg. Tr. at 10–11, but has again failed to plead any plausible claims against Finley, Mekeel, or Fox Corp., or against Rauchet as to aiding and abetting harassment.  And McHenry, in opposing dismissal, has not indicated that she is aware of additional un-pled facts that could salvage these claims.  The Court's dismissals of such claims herein are accordingly with prejudice.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (upholding dismissal of amended complaint with prejudice where, "following Defendant's first motion to dismiss for failure to state a claim," plaintiff had already amended its complaint once and failed to "resolve its pleading deficiencies in its First Amended Complaint"); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) (summary order) (district court did not abuse

discretion by dismissing with prejudice where plaintiff "did not move for leave to replead in opposition to [defendant's] motion to dismiss his original complaint with prejudice").

**CONCLUSION**

For the foregoing reasons, the Court grants in their entirety the motions to dismiss by Fox Corp., Finley and Mekeel; grants in part and denies in part Rauchet's motion to dismiss; and denies in its entirety Murdoch's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 31, 34, 40, and 43 and to terminate Fox Corp., Finley, and Mekeel as defendants in this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: December 18, 2020
      New York, New York